FILED

13 OCT -9 AM 10: 18

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; THE STATE OF FLORIDA; *ex rel.* Florida Society of Anesthesiologists,<br><br>Plaintiffs,<br><br>v.<br><br>Umesh Choudhry, an individual; Curvv, LLC a Florida Limited Liability Company; Advanced Anesthesia Associates, LLC, a Florida Limited Liability Company; All Services Anesthesia, LLC, a Florida Limited Liability Company; North Pinellas Surgery Center, LLC; a Florida Limited Liability Company; Alan Klibanoff, an individual; John Ahn, an individual; Laurence Zeitlan, an individual; Anoop Goyal, an Individual; Sanjiv Amin, an individual; North Pinnellas Surgery Center Holding Company, LLC a Florida Limited Liability Company; St. Petersburg Endoscopy Center, LLC, a Florida Limited Liability Company; Chetan Desai, an individual; Tejinder Glamour, an individual; Joseph Boulay, an individual; Garish Patel, an individual; Pothen Jacob, an individual; Belur Sreenath, an individual; Mihir Patel, an individual; West Coast Endoscopy Centers Holdings, LLC Michael Weiss, an individual; David J. Becker, an individual; David S. Barislow, an individual; Safety Harbor Surgery Center, LLC; a Florida Limited Liability Company; Theodore R. Small, an individual; Robert S, Davidson, an individual; Satinderpal S. Sondhi, an individual; Brian Oliver an individual; Endoscopy Institute of Florida LLC, a foreign corporation; *dba* Clearwater Endoscopy Center; Physicians Endoscopy Holdings Inc., a Florida Corporation; Howard Klein, an individual; Florida Center for Gastroenterology, PA, a Florida Corporation; Michael Schulman, an individual; Arthur Berman, an individual; Steven Beljic, an individual; Marc Kudelko, an individual; Tampa | Civil Action No. 13-<br><br>8:13CV2603 T27 AEP<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

FSA-19793
# 400

Bay Regional Surgery Center; Largo Endoscopy )
Center LP d/b/a Tampa Bay Regional Anesthesia; )
Fleming Island Surgery Center, a Florida )
Corporation; Jack Groover, an Individual; Arjav )
Shah, an individual; Michael Gilligan, an )
individual; Charles Standkard, an individual; )
Robert Powers, an individual; Dinesh Madhok, an )
individual; Jax Anesthesia Providers, LLC, a )
Florida Limited liability Corporation; Lawrence S. )
Goldberg, an individual; Walter A. Harmon, an )
individual; Robert Kanner, an individual; Bradford )
Joseph, an individual; Borland-Groover Clinic, a )
Florida Corporation; Southpoint Surgery Center, a )
Florida Corporation; Southpoint Anesthesia, LLC )
a Florida Limited Liability Corporation; Orange )
Park Surgery Center; John Doe 1-1000; Jane Doe )
1-1000, )
)
)
)
Defendants. )
)

---

## FALSE CLAIMS ACT COMPLAINT
## AND DEMAND FOR JURY TRIAL

### FILED UNDER SEAL

1.      Under the federal False Claims Act and the states false claims acts, as defined and more specifically listed below, this complaint is to be filed in camera and remain under seal for a period of at least sixty (60) days and shall not be served on defendants until the Court so orders. The government may elect to intervene and proceed with the action within sixty (60) days after it received the Complaint.

2.      As required by the False Claims Act, Relators voluntarily submitted prior to the filing of this complaint, a confidential written disclosure statement (subject to the attorney-client and common interest privileges to the United States Government containing material evidence and information in her possession pertaining to the allegations contained in this complaint.

## INTRODUCTION

3.      This case involves fraudulent arrangements whereby physician owners of ambulatory surgery centers ("ASCs") own and operate anesthesia companies that provide services to ASC patients and that pay profits (kickbacks) to the ASC owners in violation of the law.

4.      The ASC owners of the anesthesia companies use different models to perpetrate the foregoing, all of which are in violation of the law.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. §3730(b), which allows a private person to bring suit for a violation of the False Claims Act pursuant to 28 U.S.C. §1345 and which provides the District Courts with original jurisdiction over all civil actions commenced by the United States of America pursuant to 28 U.S.C. §1331.

6.      The acts proscribed by 31 U.S.C. §3729 et seq. and complained of herein were performed by the Defendants who transact business and reside in this district. Therefore, this Court has personal jurisdiction over Defendants and venue is proper in this district pursuant to 31 U.S.C. §3732(a).

7.      Venue is also proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because the Defendants are subject to personal jurisdiction in this District and transact business in this District.

8.      The Florida Medicaid False Claims Act claims are filed pendent to the federal claims filed herein and pursuant to Fla. Stat. Ch. §68.081 et seq.

## PARTIES

9.      Relator Florida Society of Anesthesiologists ("FSA") is a professional organization nearly 2,000 anesthesiologists throughout the State of Florida.

10.     Relator has first-hand knowledge of the facts in this Complaint.

11.     Defendant Umesh Choudhry is a physician, licensed in the State of Florida and at all times relevant to the allegations in the Complaint, was the owner of the Defendants Curvv, LLC.

12.     Defendant Curvv, LLC is a Florida Limited Liability Company doing business at 1773 Long Bow Lane Clearwater, Florida.  Defendant Curvv, LLC provides anesthesia to patients at ASCs.

13.     Defendant Advanced Anesthesia Associates, LLC is a Florida Limited Liability Company with its registered office at 9887 4th Street North, Suite 234.  Defendant Advanced Anesthesia Associates, LLC is a professional organization comprised of Anesthesiologists and CRNAs providing anesthesia to patients and at all times relevant to the allegations in the Complaint.

14.     Defendant All Services Anesthesia LLC is a Florida Limited Liability Company whose principal place of business is located at the same address as Advanced Anesthesia Associations, LLC.  Advanced Anesthesia Associations, LLC is the listed manager of All Services Anesthesia LLC pursuant to State of Florida, Division of Corporations – filings and at all times relevant to the allegations in the Complaint.

15.     Defendant North Pinellas Surgery Center LLC is a Florida Limited Liability Company with its offices in Dunedin, Florida.  It is a for profit, ambulatory surgical center and at all times relevant to the allegations in the Complaint.

4

16. Defendant Alan Klibanoff is a physician licensed in the State of Florida and at all times relevant to the allegations in the Complaint, and is a manager/member of North Pinellas Surgery Center LLC and North Pinellas Surgery Center Holding Company and at all times relevant to the allegations in the Complaint.

17. Defendant John Ahn is an osteopathic physician, licensed in the State of Florida and all times relevant to the allegations in the Complaint, and is a manager/member of North Pinellas Surgery Center LLC and North Pinellas Surgery Center Holding Company and at all times relevant to the allegations in the Complaint.

18. Defendant Laurence Zeitlin is a physician, licensed in the State of Florida and all times relevant to the allegations in the Complaint, and is a manager/member of North Pinellas Surgery Center LLC and North Pinellas Surgery Center Holding Company and at all times relevant to the allegations in the Complaint.

19. Defendant Anoop Goyal is a physician, licensed in the State of Florida and all times relevant to the allegations in the Complaint, and is a manager/member of North Pinellas Surgery Center LLC and North Pinellas Surgery Center Holding Company and at all times relevant to the allegations in the Complaint.

20. Defendant Sanjiv Amin is an osteopathic physician, licensed in the State of Florida and all times relevant to the allegations in the Complaint, and is a manager/member of North Pinellas Surgery Center LLC. Dr. Amin is also the Managing Partner of Defendant North Pinellas Surgery Center Holding Company and at all times relevant to the allegations in the Complaint.

21. Defendant North Pinellas Surgery Center Holding Company, LLC is a State of Florida Limited Liability Company and is located at the same address as North Pinellas Surgery Center LLC and at all times relevant to the allegations in the Complaint.

22. Defendant St. Petersburg Endoscopy Center, LLC is a State of Florida Limited Liability Company and is located in St. Petersburg, Florida and provides Gastroscopy and Colonoscopy procedures.

23. Defendant Chetan Desai is a physician licensed in the State of Florida and all times relevant to the allegation in the Complaint. Dr. Desai is a manager of St. Petersburg Endoscopy Center LLC.

24. Defendant Tejinder Glamour is a physician licensed in the State of Florida and all times relevant to the allegation in the Complaint. Dr. Glamour is a manager of St. Petersburg Endoscopy Center LLC.

25. Defendant Joseph Boulay is a physician licensed in the State of Florida and all times relevant to the allegation in the Complaint. Dr. Boulay is a manager of St. Petersburg Endoscopy Center LLC.

26. Defendant Girish Patel is a physician licensed in the State of Florida and all times relevant to the allegation in the Complaint. Dr. Patel is a manager of St. Petersburg Endoscopy Center LLC.

27. Defendant Pothen Jacob is a physician licensed in the State of Florida and all times relevant to the allegation in the Complaint. Dr. Jacob is a manager of St. Petersburg Endoscopy Center LLC.

28.     Defendant Belur Sreenath is a physician licensed in the State of Florida and all times relevant to the allegation in the Complaint.  Dr. Sreemath is a manager of St. Petersburg Endoscopy Center LLC.

29.     Defendant Mihir Patel is a physician licensed in the State of Florida and all times relevant to the allegation in the Complaint.  Dr. Patel is a manager of St. Petersburg Endoscopy Center LLC.

30.     Defendant West Coast Endoscopy Centers Holdings, LLC doing business in Florida and is located in Clearwater, Florida, and all times relevant to the allegation in the Complaint.

31.     Defendant Michael Weiss is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

32.     Defendant David J. Becker is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

33.     Defendant David S. Borislow is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

34.     Defendant Safety Harbor Surgery Center, LLC is a State of Florida Limited Liability Company and its principal address is 3280 N. McMullen Booth Road, Ste. 110, Clearwater, Florida and at all times relevant to the allegations in the Complaint.

35.     Defendant Theodore R. Small is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

36.     Defendant Robert S. Davidson is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

7

37.    Defendant Satinderpal S. Sondhi is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

38.    Defendant Brian Oliver is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

39.    Defendant Endoscopy Institute of Florida LLC  a Foreign Corporation doing business as Clearwater Endoscopy Center and its principal address is 1200 S. Pine island Road, Plantation, Florida  and at all times relevant to the allegations in the Complaint.

40.    Defendant Physicians Endoscopy Holdings, Inc., a State of Florida Corporation and its principal address is 616 E. Street, Suite A, Clearwater, Florida and at all times relevant to the allegations in the Complaint.

41.    Defendant Howard Klein is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

42.    Defendant Florida Center for Gastroenterology, PA., a State of Florida Corporation and its principal address is 8250 Bryan Dairy Road, Suite 200, Largo, Florida and at all times relevant to the allegations in the Complaint.

43.    Defendant Michael Schulman is an osteopathic physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.  Dr. Schulman is the Vice President of Florida Center for Gastroenterology, P.A.

44.    Defendant Arthur Berman is an osteopathic physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.  Dr. Berman is the President of Florida Center for Gastroenterology, PA.

45.    Defendant Steven Beljic is an osteopathic physician licensed in the state of Florida and all times relevant to the allegation in the Complaint. Dr. Beljic is Secretary for the Florida Center for Gastroenterology, P.A.

46.    Defendant Marc Kudelko is an osteopathic physician licensed in the state of Florida and all times relevant to the allegation in the Complaint. Dr. Kudelko is the Treasurer for the Florida Center for Gastroenterology, P.A.

47.    Defendant Largo Endoscopy Center LP, d/b/a Tampa Bay Regional Surgery Center, a Corporation with its principal address as 7300 Bryan Dairy Road, Suite 495, Largo, Florida and at all times relevant to the allegations in the Complaint.

48.    Defendant Tampa Bay Regional Anesthesia is the business name of an entity doing business in Florida and at all times relevant to the allegations in the Complaint.

49.    Defendant Jack Groover is a physician licensed in the State of Florida and all times relevant to the allegation in the Complaint. Dr. Groover is the manager or member of various entities including but not limited to Borland-Groover clinic.

50.    Defendant Arjav Shah is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

51.    Defendant Michael Gillagan is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

52.    Defendant Charles Stankard is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

53.    Defendant Robert Powers an osteopathic physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

9

54.     Defendant Dinish Madhok a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

55.     Defendant Jax Anethesia Providers, LLC is the business name of an entity doing business in Florida and at all times relevant to the allegations in the Complaint.

56.     Defendant Lawrence S. Goldberg is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

57.     Defendant Walter S. Harmon is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

58.     Defendant Robert Kanner is a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

59.     Defendant Bradford Joseph a physician licensed in the state of Florida and all times relevant to the allegation in the Complaint.

60.     Defendant Borland-Groover Clinic, P.A. a Florida Profit Corporation with its principal address as 4800 Belfort Road, Jacksonville, Florida and at all times relevant to the allegations in the Complaint.

61.     Defendant Southpoint Surgery Center, LLC a Florida Limited Liability Corporation with its principal address as 7051 Southpoint Parkway, S., 1st Floor, Jacksonville, Florida and at all times relevant to the allegations in the Complaint.

62.     Defendant Southpoint Anesthesia, LLC a Florida Limited Liability Corporation with its principal address as 4800 Belfort Road, Jacksonville, Florida and at all times relevant to the allegations in the Complaint.

10

63.    Defendant Surgicare of Orange Park LTD, d/b/a/ Orange Park Surgery Center, is an entity doing business in the State of Florida whose principal address is 2050 Professional Center Drive, Orange Park, Florida and at all times relevant to the allegations in the Complaint.

**THE REGULATORY FRAMEWORK**

The Federal False Claim Act ("FCA")

64.    A cause of action under the FCA arises when any person knowingly presents or causes to be presented a false or fraudulent claim for payment or approval by government funds. 31 U.S.C. §3729(a)(1)(A).

65.    A cause of action under the FCA also arises when any person knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. §3729(a)(1)(B).

66.    As defined under 31 U.S.C. §3729(b)(1), "knowing" and "knowingly" means: (i) acting with actual knowledge of the information; (ii) acting in deliberate ignorance of the truth or falsity of the information; or (iii) acting in reckless disregard of the truth or falsity of the information and that statute makes clear that it does not require proof of specific intent to defraud.

67.    In addition, the FCA provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim for payment or approval is liable for a civil penalty of not less than $5,500 and up to $11,000 for each such claim, and three times the amount of the damages sustained by the government.

68.    The qui tam provision of the FCA empowers persons having information regarding a false or fraudulent claim against the government to bring an action on behalf of the government.

11

69.    A FCA complaint is filed under seal and without service on the defendants and remains under seal while the government conducts an investigation of the allegations in the Complaint and determines whether to join the action.

The Florida False Claims Act

70.    The Florida Act further provides that any person who knowingly makes, uses, or cause to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state is liable for the full amount of damages incurred by the State due to the false statement, and for each claim a civil penalty of not less than $5,500.00 or more than $11,000.00 plus triple the amount of damages suffered by the state as a result of the conduct. Fla. Stat. §68.082(2)(g).

71.    Similar to the federal False Claims Act, the Florida Act provides a cause of action for an individual to bring a cause of action, on behalf of the State of Florida, and against defendants for false and/or fraudulent Medicaid claims. Fla. Stat. ch. 68.083(2).

Federal and State Funding for Medicaid

72.    Medicaid was established by Title XIX of the Social Security Act of 1965, 42 U.S.C. §1396 1396v. Medicaid is a jointly-funded federal-state program and enables states such as Florida to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary medical services.

73.    Although Medicaid is funded in significant part by the states, the federal government pays a portion of Medicaid costs. In Florida, the federal government pays for approximately 53 percent of all Medicaid health care services, while the State of Florida funds the remaining 47 percent. Accordingly, all claims or requests for payments submitted to the

12

Medicaid program are subject to liability under both the federal FCA and the Florida False Claims Act.

Anti-Kickback Statute

74.     In 1972, Congress enacted the federal health care Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b et seq., which prohibited payments, directly or indirectly designed to induce a person to refer or recommend services that may be paid for by federal government. AKS also provides that those who knowingly and willfully solicit or receive, offer or pay anything of value, whether directly or indirectly, in exchange for or to induce the referral of items or services for which a federal health care program may make payment shall be guilty of a felony.  42 U.S.C. § 1320a-7b(b)(1).

75.     The Anti-kickback Statute covers any such arrangement where at least one purpose of the remuneration was to pay for the referral of services or to otherwise induce referrals.

76.     Violations of AKS form a basis for federal and State FCA liability.

77.     The purpose of the AKS is to protect the Medicare and Medicaid programs from increased costs and abusive practices resulting from provider decisions that are based on self-interest rather than the cost, quality of care or necessity of services.

78.     The AKS seeks to prevent overutilization, limit costs, preserve freedom of choice and preserve competition in health care services.  Therefore, complying with AKS is essential to protecting Medicare and Medicaid, and compliance is material to payment from and participation in government-funded health care programs.

79.     Defendants know that such compliance is a condition of participation in and payment by the Medicare and Medicaid programs.

## OIG Advisory Opinion No. 12-06

80.    The Office of Inspector General recently addressed a proposed arrangement for anesthesia services similar to the ones orchestrated by Defendants. See OIG Advisory Opinion No. 12-06, Proposal B.

81.    The OIG opinion addressed an arrangement where the owners of the ASC were also the owners of the entity providing the anesthesia services in the ASC. The anesthesia company was run by an anesthesiologist who charged the ASC a flat rate for its services pursuant to a contract with the ASC. The owners of the ASC retained the profits from the operations of the anesthesia entity after it paid out the anesthesiologist. This is commonly referred to as the "company model" in the anesthesia services sector.

82.    Under the company model, the ASC refers its patients to the anesthesiology company while the ASC owners are also owners of the anesthesiology company or derive profits therefrom.

83.    In exchange for those referrals, the ASC owners take a kick back from the anesthesiology company under the guise of "profit" for those services.

84.    In that opinion, the OIG stated that it has "long been concerned about the potential for investments in ASCs to serve as vehicles to reward referrals."

85.    Moreover, the OIG found that no safe harbors would apply to the profits the physician owners were receiving from the anesthesia services.

86.    Therefore, Defendants use of the company model created an illegal kickback scheme in violation of the AKS.

14

87.    Compliance with the AKS is a condition material to payment from Medicare and/or Medicaid.

88.    As a condition precedent to the receipt of payment or reimbursement from Medicare and Medicaid of costs incurred for treating and providing care to beneficiaries, defendants must be familiar with the laws and regulations regarding the provision of healthcare services.

89.    If services are billed to Medicare or Medicaid despite the failure to satisfy a condition material to reimbursement, then they are false claims because they are based on fraudulent activities and billings of defendants that should not be paid.

90.    By falsely billing Medicare and Medicaid, the defendants knowingly caused the Government to pay defendants more than it would have had defendants followed the law.

91.    Over 50% of the procedures performed by the Defendants were reimbursed from government payors, such as Medicare and Medicaid.

## DESCRIPTION OF FRAUDULENT SCHEMES

Dr. Umesh Choudhry's Entities: Curvv, AAA and All Services

92.    Defendant Dr. Umesh Choudhry is at a center of a scheme to provide kickbacks to physician owners of ASCs in west Florida.

93.    Dr. Choudhry is an owner of Defendant Curvv, LLC, which owns Advanced Anesthesia Associates, LLC ("AAA") and All Services Anesthesia, LLC ("All Services"). Those entities provide anesthesia services to ambulatory surgery centers in Florida.

94.    Dr. Choudhry secured contracts for the above anesthesia service companies by sharing the revenue from those entities with the owners of the ASCs that awarded him the contracts.

15

95.     The following ambulatory surgery centers engage Dr. Choudhry's anesthesia service entities to provide the exclusive anesthesia services, while sharing its revenue with the physician owners.

96.     Defendant North Pinellas Surgery Center ("NPSC") is owned by Defendant Drs. Alan Klibanoff, John Ahn, Laurence Zeitlin, Sanjiv Amin and Anoop Goyal.

97.     NPSC's anesthesia is performed by AAA and Relator has learned that its physician owners receive payments from AAA (or one of Dr. Choudhry's other entities) in exchange for the use of AAA.

98.     Defendant St. Petersburg Endoscopy Center ("SPEC") is owned by Defendant Drs. Chetan Desai, Tejinder Glamour, Joseph Boulay, Girish Patel, Pothen Jacob Mohir Patel and Belur Sreenath.

99.     SPEC receives exclusive anesthesia services from one of Dr. Choudhry's anesthesia service companies and receives payments (i.e. kickbacks) in exchange for using his entity.

100.    Defendant West Coast Endoscopy Center Holding LLC ("WCEC") is owned by Dr. Choudhry and eight other physicians, including Defendant Drs. Michael L. Weiss, David J. Becker, Chetan K. Desai, Pothen Jacob, David S. Barislow, Mihir Patel, Howard Klein and Belur Sreenath.

101.    WCEC receives exclusive anesthesia services from one of Dr. Choudhry's anesthesia services companies and receives payments (i.e. kickbacks) from Dr. Choudhry's anesthesia company in exchange for the referrals.

102. Defendant Safety Harbor Surgery Center, LLC ("SHSC") is owned by Dr. Choudhry, along with Drs. Theodore R. Small, Robert S. Davidson, Satinderpal S. Sondhi and Brian Oliver.

103. One of Dr. Choudhry's entities, All Services, is the sole provider of anesthesia services at SHSC.

104. Dr. Choudhry and the physician owners of SHSC receive a share of the anesthesia service contract revenue through an undisclosed agreement.

105. Defendant Clearwater Endoscopy Center ("CEC") is also owned by some of the Defendants.

106. CEC receives exclusive anesthesia services from one of Dr. Choudhry's anesthesia service companies and also receives payments (i.e. kickbacks) in exchange for using his entity.

107. Defendant endoscopy centers, NPSC, SPEC, WCEC, and CEC, previously used a legitimate outside anesthesia service company, most commonly Bay Area Anesthesia, L.L.C. ("BAA").

108. However, sometime during the last few years, those ASCs were presented with the opportunity to receive some portion of the anesthesia services fees (i.e., kickbacks) through one of Dr. Choudhry's entities.

109. Each one of those ASCs, NPSC, SPEC, WCEC, and CEC, then terminated their anesthesia service contract with their previous outside provider.

110. Likewise, the SHSC, which is also operated by Dr. Choudhry's group, set up the arrangement to put more money in its physician owner pockets. Under the arrangement with Dr.

17

Choudhry's group, the anesthesiologist servicing SHSC receives approximately $300,000 in compensation, but generates approximately $900,000 in anesthesia revenues for the center.

111. Even accounting for approximate overhead and other expenses, the SHSC owners make nearly $500,000 in profit from the anesthesia billings through their new arrangement with Dr. Choudhry's group.

112. Moreover, the physician owners then sought to maximize those kickbacks by substantially increasing the amount of anesthesia rendered to patients.

113. For example, at NPSC and during its contract with BAA, anesthesia had been used in approximately 60% of the procedures. After BAA was replaced by one of Dr. Choudhry's entities, AAA, the anesthesia utilization at NSPC immediately increased to nearly 100% of the procedures.

114. Each of the other ASCs listed above offered BAA the opportunity to participate in the scheme. After BAA turned them down, each saw the same increase in use of anesthesia – 60% to 100%.

115. The sharing of profits led to over-utilization of anesthesia, as well as potential harm to the patients who would not normally have received anesthesia services.

116. Furthermore, one of the ASCs physicians who left and later wanted "back into" the scheme was not allowed to return because he did not bring enough endoscopy business to the ASC which could be serviced by the anesthesia provider and generate revenues back to the ASC and its owners.

<u>Florida Center for Gastroenterology</u>

117. Defendant Florida Center for Gastroenterology, P.A. ("FCG") set up a company model for its physicians.

118.    FGC is owned by Defendant Drs. Michael Schulman, Arthur Berman, Steven Beljic, Robert R. Powers, Jr., Dinesh Madhok and Marc Kudelko.

119.    FGC does all of its procedures at the Tampa Bay Regional Surgery Center ("TBRSC"), which is also owned by the same physicians.

120.    From 2009 to July 2011, Anesthesiology Associates of Pinellas County ("AAPC") provided all the anesthesia services at the TBRSC and those services had gross annual revenues of approximately $1.3 Million.

121.    In July 2011, FGC/TBRSC terminated AAPC and formed Tampa Bay Regional Anesthesia LLC ("TBRA") as an anesthesia service company.

122.    TBRA was owned by the physicians that owned FGC.

123.    Those doctors hired Defendant Dr. Joseph Sabadish, an M.D.A., to manage TBRA.

124.    TBRA paid Dr. Sabadish approximately $300,000, while collecting all the billings for itself, as opposed to the previous anesthesiologist, who billed for the services independently and received approximately twice that amount.

125.    Sometime after July 2012, the FGC physician owners sold their interest in the anesthesia group to Dr. Sabadish. That changed the form, but not substance of the relationship.

126.    Dr. Sabadish's new company now pays a "franchise fee" to the ASC owners over 5 years totaling $500,000 to $1,000,000.

127.    After 5 years of paying those fees, Dr. Sabadish will then have an exclusive right to service the center.

128.   Furthermore, TBRA is required to use a billing company owned by the FGC physicians, which ensures that the FGC physicians will receive additional revenue based on the volume and value of the anesthesia services billed at their ASC.

Dr. Groover- East Florida

129.   On the east side of Florida, Defendant Dr. Jack Groover and others are also participating in a similar anesthesia services kickback scheme.

130.   Defendant Fleming Island Surgery Center, LLC ("FISC") is owned by Defendant Drs. Groover, Arjav Shah, Michael Gilligan and Charles Standkard.

131.   Dr. Groover is also an owner of Defendant Jax Anesthesia Providers, LLC, which is the exclusive provider of anesthesia services at FISC.

132.   Dr. Groover and the other physician owners receive revenue from the anesthesia services companies, such as Jax.

133.   Throughout Duvall County, Florida, Defendant Borland-Groover Clinic ("BGC") is a physician group that operates at multiple surgery centers.

134.   BGC is owned in part by Dr. Groover.

135.   BGC provides services at various ASCs, including Defendant Southport Surgery Center, LLC ("SSC") which is also owned, in part, by Dr. Groover.

136.   SSC exclusively uses Defendant Southpoint Anesthesia LLC as its anesthesia provider.

137.   Southpoint Anesthesia is an entity owned by Defendant BGC Holdings, which is owned, in part by Dr. Groover.

138.   Similar arrangements exist for other ASCs owned by Dr. Groover, including Orange Park Surgery Center.

139.    In addition, Dr. Groover used his reputation and large practice to dictate to other ASCs that he would refer his patients to those ASCs if they used one of his anesthesia service companies.

## COUNT I

### False Claims Act - False Claims

140.    Relator realleges and incorporates paragraphs 1 - 139 of this Complaint as if fully set forth herein.

141.    In performing the acts described above, Defendants, acting in concert and/or through their own acts or through the acts of their officers and agents knowingly and/or recklessly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

142.    The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments, which resulted in its being damaged in an amount to be determined.

## COUNT II

### False Claims Act - False Statements

143.    Relator realleges and incorporates paragraphs 1 - 139 of this Complaint as if fully set forth herein.

144.    In performing the acts described above, Defendants, acting in concert and/or through their own acts or through the acts of their officers, knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. §3729(a)(1)(B).

21

145.    The United States, unaware of the foregoing circumstances and conduct of the Defendants, made full payments which resulted in its being damaged in an amount to be determined.

## COUNT III

### Florida False Claims Act

146.    Relator realleges and incorporates paragraphs 1 - 139 of this Complaint as if fully set forth herein.

147.    Under the Florida False Claims Act, in effect prior to July 1, 2013, Defendants, in performing the acts described above, acting in concert and/or through their own actions or through the acts of their officers and/or agents, have knowingly violated:

a) Fla. Stat. § 68.082(2)(a) by knowingly presenting or causing to be presented to an officer or employee of an agency a false or fraudulent claim for payment or approval and/or;

b) Fla. Stat. § 68.082(2)(b) by knowingly making, using, or causing to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency.

148.    Under the Florida False Claims Act, as amended and effective July 1, 2013, Defendants, in performing the acts described above, acting in concert and/or through their own actions or through the acts of their officers and/or agents, have knowingly violated:

a) Fla. Stat. § 68.082(2)(a) by knowingly presenting or causing to be presented a false or fraudulent claim for payment or approval and/or;

b) Fla. Stat. § 68.082(2)(b) by knowingly making, using, or causing to be made or used a false record or statement material to a false or fraudulent claim.

22

149.   The State of Florida, unaware of the foregoing circumstances and conduct of the Defendants, made full payments which resulted in its being damaged in an amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Relators respectfully requests that this Court enter judgment against Defendants as follows:

a.   That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged in this Complaint, as the Civil False Claims Act, 31 U.S.C. § 3729 et seq. provides;

b.   That civil penalties of $5,500 to $11,000 be imposed for each and every false claim that the Defendants caused to be presented and/or payment the Defendants wrongfully avoided paying to the United States;

c.   That pre- and post-judgment interest is awarded, along with reasonable attorneys' fees, costs, and expenses which Relators necessarily incurred in bringing and pressing this case;

d.   That Relators be awarded the maximum amount allowed pursuant to the False Claims Act;

e.   That the State of Florida be awarded damages in the amount of three times the damages sustained by the State of Florida because of the false claims alleged in this Complaint, as the Florida False Claims Act provides;

f.   That civil penalties of $5,500 to $11,000 be imposed for each and every false claim that the Defendants caused to be presented to the State of Florida Medicaid Program;

23

g.  That necessary expenses, costs, and reasonable attorney's fees be awarded as provided by the Florida False Claims Act;

h.  That Relators be awarded the maximum amount allowed pursuant to the Florida False Claims Act; and,

i.  That this Court award such other and further general, equitable, and legal relief as it deems just and proper.

## DEMAND FOR A JURY TRIAL

Relators demand a jury trial on all claims alleged herein.

Respectfully submitted,

JOHN R. NEWCOMER, JR.
Florida Bar No. 143380
jnewcomer@jameshoyer.com
ELAINE STROMGREN
Florida Bar No. 041760
estromgren@jameshoyer.com
JAMES HOYER, NEWCOMER &
SMILJANICH, P.A.
One Urban Centre, Suite 550
Tampa, Florida 33609
(813) 397-2300
(813) 397-2310
*Local Counsel for Relator*

24

25

Monica P. Navarro P52985
J. Marc Vezina P76232
Louis C. Szura P71764
**VEZINA LAW, PLC**
280 N. Old Woodward Ave, Suite LL20
Birmingham, MI 48009
(248) 558-2700
(248) 232-1581
mnavarro@vezinalaw.com
jmv@vezinalaw.com
lszura@vezinalaw.com
*Lead Counsel for Relator*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by Certified Mail, Return Receipt Requested, this 9th day of October, 2013 to the following:

The Honorable Eric H. Holder, Jr.
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530-0001

Civil Process Clerk
United States Attorney's Office
Middle District of Florida
400 North Tampa Street
Suite 3200
Tampa, FL  33602

The Honorable Pam Bondi
Attorney General of Florida
The Capitol, PL 01
Tallahassee, FL  32399

Jeff Atwater
Chief Financial Officer
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL  32399-0300

ELAINE STROMGREN