UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA; THE STATE
OF FLORIDA, ex rel. Florida Society of
Anesthesiologists,

     Plaintiffs,

v.

Umesh Choudhry, et al.,

     Defendants.

_____/

Civil Action No.
8:13-cv-2603-T-27AEP

## DEFENDANTS' MOTION TO STAY DISCOVERY
## AND TO EXTEND CASE MANAGEMENT DEADLINES

Defendants, Umesh Choudhry, CURVV, LLC, Advanced Anesthesia Associates, LLC, All Services Anesthesia, LLC, North Pinellas Surgery Center, LLC, North Pinellas Surgery Center Holding Company, LLC, St. Petersburg Endoscopy Center, LLC, West Coast Endoscopy Holdings, LLC, Safety Harbor Surgery Center, LLC, Clearwater Ambulatory Surgery Centers, Inc. (d/b/a Clearwater Endoscopy Center), Physicians Endoscopy Holdings, Inc., Jack Groover, Jax Anesthesia Providers, LLC, Borland-Groover Clinic, and Southpoint Anesthesia, LLC, pursuant to Fed. R. Civ. P. 26(c), jointly move the Court to stay the commencement of all discovery in this False Claims Act case and to extend the time for a Case Management Conference, submission of a Case Management Report and initial disclosures, until this Court disposes of the last dispositive motion to dismiss directed to Relator's Second Amended Complaint, and successor complaints as necessary, in this matter.

# I.   INTRODUCTION

Under the circumstances of this False Claims Act case, where Relator is a corporate outsider and demonstrates no independent or insider knowledge of the 15 Defendants named in its suit, the Court should stay discovery until it resolves Defendants' dispositive Motions to Dismiss the Second Amended Complaint ("2nd AC").  The law of the Eleventh Circuit protects False Claims Act defendants from "fishing expeditions" by relators who seek discovery in order to develop or revive legally insufficient complaints.  Moreover, requiring the parties to engage in discovery when it appears that Relator has not stated a viable claim, let alone stating claims in a manner that would allow for narrowly tailored discovery, will waste the parties' resources, and burden and prejudice the Defendants.

Relator — a professional "Society" of anesthesiologists — attempts for a third time in its 2nd AC to state a False Claims Act action based on purported anti-kickback statute violations.  (Doc. 32, ¶¶ 42–53).  Relator, though a corporate outsider, claims that a business structure described in a non-precedential[1] Advisory Opinion of the Office of Inspector General for the Department of Health and Human Services ("OIG") bears some similarity to business arrangements[2] among two separate groups of Defendants, (*id.*), and concludes that "therefore" all named Defendants have intentionally violated the anti-kickback statute every

---

[1] Relator cannot rely on the OIG Advisory Opinion in the instant case as it provides, "This advisory opinion is issued only to [name redacted], the requestor of this opinion.  This advisory opinion has no application to, and cannot be relied upon by, any other individual or entity."  OIG Advisory Opinion No. 12-06, 2012 WL 2061423, at *11 (June 1, 2012).

[2] Even if there were similarities to the "company model," the OIG opinion states that its opinion "has no applicability to other arrangements, even those which appear similar in nature or scope."  *Id.*

day for "the last few years," (*id.* at ¶¶ 48, 53, 68), and, consequently, have also violated the Federal and Florida false claims acts, (*id.* at ¶¶ 33).[3]

Many of the Relator's members compete with anesthesiologists providing service to Defendants' patients. Relator objects to Defendants' competing business models, which integrate the delivery of surgical and anesthesia services in ambulatory surgical centers, and the instant litigation appears to be an attempt to discourage further adoption of such models. The epitome of a corporate outsider, Relator lacks the requisite personal knowledge about the different operations of the 15 Defendants to state a plausible claim that meets the pleading standards required in FCA suits. The paucity of factual allegations to support Relator's conclusory assertions of FCA violations against the Defendants is particularly conspicuous in this case. Rather than Relator shedding light on fraudulent activity, the underlying issue here is a dispute between competitors that is brought by unidentified Society actors upset about business trends that they oppose in the anesthesiology industry. (*See e.g.*, Doc. 32, ¶ 91).

The United States declined to intervene in this case. (Doc. 2). Each Defendant separately moved to dismiss Relator's 2nd AC in its entirety with prejudice, (Docs. 43, 44, 50, 57, 59, 62, 63, 65, 71, 75),[4] because, as to every Defendant, the 2nd AC (i) fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) and Rule 9(b); (ii) fails to provide support or evidence that Relator has personal knowledge of the facts in the 2nd AC; and (iii) violates Rule 8(a) and 10(b) as a shotgun style pleading. The Court has not imposed a

---

[3] *See* Federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA") and the analogous Florida False Claims Act, Fla. Stat. § 688.083 *et seq.* ("FFCA") and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b *et seq.* ("AKS").

[4] Defendant Clearwater Ambulatory Surgery Centers, Inc. has until August 8, 2016 to file a Response to the 2nd AC. (Doc. 52). An additional Motion to Dismiss is anticipated.

discovery deadline or scheduling order at this time, but issued a Case Management Notice on April 6, 2016. (Doc. 4). Defendants believe that an extension of Case Management Deadlines is reasonable and appropriate.

The Eleventh Circuit instructs that False Claims Act relators are not entitled to discovery to attempt to develop otherwise insufficient pleadings. *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 801 n. 23 (11th Cir. 2014) ("A line of decisions from the Eleventh Circuit —*Clausen*, *Corsello*, *Atkins*, and *Solvay* — make clear that [the district court] has an important gatekeeping function where FCA claims are involved."). When deciding False Claims Act cases, the Eleventh Circuit counseled that "courts must be principled in not giving a plaintiff a 'ticket' to discovery absent a suitable basis." *Id.* (citing *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359–60 (11th Cir. 2006)). These instructive False Claims Act cases support a stay of discovery unless and until, this Relator can state a sufficient FCA claim against each Defendant.

Given the strength of the Defendants' Motions to Dismiss and the likelihood that Relator's claims against each Defendant will be dismissed, the Court should stay discovery in this matter. As discussed further below, each Defendant's Motion to Dismiss demonstrates that Relator's claims are deficient and will not survive a motion to dismiss. Relator simply does not have the facts to satisfy Rule 9(b) as to any Defendant, and, as a result, the Court should not punch Relator's "ticket" and allow it to proceed with discovery. Drafted by a corporate outsider with no relationship to any Defendant, the 2nd AC fails to include support that Relator has personal knowledge of the facts in the 2nd AC. Relator's sole avenue to find a claim it does not presently have, and does not exist, is to conduct discovery. The Eleventh

Circuit does not permit this. *See Keeler*, 568 F. App'x at 801 n. 23. Allowing Relator to conduct discovery prior to it pleading a legally sufficient claim would waste resources and burden Defendants. Given the vague allegations, undefined time period, and 10 separate businesses at issue, Defendants anticipate that Relator–competitors will seek broad discovery involving thousands of claims over several years, including emails, bills, accounting records, and internal records, including confidential and proprietary patient records and financial information.

Additionally, Relator's shotgun style pleading whereby it lumps all Defendants together for an undefined time period and incorporates all allegations into each count makes it impossible to tailor any clear discovery limits. *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008) (approving that FCA discovery should "be limited and tailored to the specificity of the complaint."). The lack of specific claims together with Relator's shotgun style and open-ended pleading would assuredly lead to burdensome discovery and unending disagreement over the proper scope of discovery.

Staying discovery at this time will not prejudice Relator, who has extended this matter through its own actions, (Docs. 5, 6, 30, 32), and who would have sufficient time to commence discovery if the action is allowed to proceed. Indeed, a stay in this case — where multiple Defendants and claims are involved — is necessary to promote judicial efficiency and eliminate the burden on the Court and the parties regarding discovery that may be avoided by the Court deciding the pending Motions to Dismiss or subsequent dispositive motions, if necessary.

For these reasons, which are more fully explained below, the Court should stay discovery until it resolves the last motion to dismiss directed to the 2nd AC in this matter and, in the event that Relator's 2nd AC survives, correspondingly extend the Case Management Conference deadlines until 20 days after that date.

## II.    MEMORANDUM OF LAW.

### A.    Discovery Should Be Stayed Until the Pleadings Are Resolved.

The Court may stay discovery "for good cause" in order to "protect a party or person from annoyance" and/or to avoid "undue burden or expense." Fed. R. Civ. P. 26(c). Here, Relator "has no right to discovery" because Defendants have filed dispositive motions to dismiss raising "purely legal question[s]." *Cheshire v. Bank of Am.*, 351 Fed. App'x 386, 388 (11th Cir. 2009) (internal quotes omitted). "[F]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). Moreover, staying discovery is especially appropriate when a *qui tam* relator has not satisfied Rule 9(b)'s particularity requirement and has not provided a reasonable basis for its allegations. *See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1316 (11th Cir. 2002) ("When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements.").

In fact, this Court found it appropriate to stay discovery in *qui tam* cases pending the resolution of dispositive motions. *See e.g.*, Order, *U.S. ex rel. Schubert v. All Children's Health Sys., Inc.*, No. 8:11-CV-1687-T-27EAJ (M.D. Fla. Jan. 3, 2013) (Whittemore, J.) (Doc. 32) (granting defendants' motion for protective order and to stay discovery pending resolution of relator's motion for leave to file third amended complaint, and defendants' motion to dismiss third amended complaint, if filed); Order, *U.S. ex rel. Johnson v. E-Med Source of Florida, Inc., et al.*, No. 8:13-CV-02017-T-27EAJ (M.D. Fla. Nov. 3, 2015) (Whittemore, J.) (Doc. 50) (granting motion to dismiss complaint without prejudice and simultaneously granting unopposed motion to stay discovery until Defendants answered a complaint); *see also* Order, *U.S. ex rel. Mastej v. Health Management Assoc., Inc.*, No. 2:11-cv-89-FTM-29DNF (M.D. Fla. Dec. 2, 2011) (Frazier, J.) (Doc. 72) (staying claims-related discovery pending resolution of motions to dismiss *qui tam* complaint).

To prevail on a motion to stay discovery pending resolution of a dispositive motion, the movant must show that "good cause and reasonableness" support a stay. *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006). "[A] court must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Id.* (citations omitted). To this end, a court must take a "preliminary peek" at the merits of the dispositive motion to see if it "appears to be clearly meritorious and truly case dispositive." *Id.* (internal quotation marks omitted). As established below, good cause exists for a stay in the instant case.

**B.**     **Defendants' Motions to Dismiss Are Meritorious and Dispositive.**

Defendants' Motions to Dismiss, if granted, would dispose of the entire case and eliminate the need for any discovery. *See id.* As such, a stay of discovery pending resolution of the last motion to dismiss directed to the pleadings is appropriate. *See Solar Star Systems, LLC v. Bellsouth Telecomm., Inc.*, No. 10-21105-CIV, 2011 WL 1226119, at *1 (S.D. Fla. Aug. 12, 2011) (noting that "[p]otentially dispositive motions filed prior to discovery weigh heavily in favor of issuing a stay"); *Chudasama*, 123 F.3d at 1367.

        **i.**     **Relator Fails to Plead Claims Based on Fraud with Particularity.**

Relator's 2nd AC fails to meet the pleading standards of Fed. R. Civ. P. 9(b). Specifically, Relator fails to allege factual allegations of fraud by the Defendants that violate the FCA, the analogous FFCA, or the AKS, with sufficient particularity in accordance with Fed. R. Civ. P. 9(b) and controlling case law. *See Kunz*, 2011 WL 2269968 at *7 (citing *Clausen*, 290 F.3d at 1309–11); *see also U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (an AKS violation must also be pleaded with particularity in an FCA action premised on an unlawful kickback).[5]

Relator's 2nd AC is not close to being legally sufficient. Throughout its 2nd AC, Relator makes conclusory and generalized allegations of purported illegal activities. (Docs. 43, 44, 50, 57, 59, 62, 63, 65, 71, 75). Under Relator's flawed "company model" theory, Relator does not make clear which "Defendants" use "the company model" to allegedly create "an illegal kickback scheme in violation of the AKS," pleading only that "ASC

---

[5] Courts analyze claims under the FCA and FFCA similarly using the Rule 9(b) standard. *See U.S. v. Aggarwal*, No. 6:03-cv-117-Orl-31KRS, 2004 WL 5509107, at *4 n. 6 (M.D. Fla. Nov. 8, 2004) (citing *U.S. ex. rel. Carroll v. JFK Med. Ctr.*, No. 01-8155-CIV, 2002 WL 31941007 (S.D. Fla. Nov. 15, 2002) (making no distinction between FCA and FFCA under Rule 9(b)).

owners, operators, and/or contractors . . . and/or companies use different models to perpetrate the foregoing." (Doc. 32, ¶¶ 4, 48). Defendant, West Coast Endoscopy Holdings, LLC ("WCEH"), for example, is only referenced in 3 out of 100 paragraphs in Relator's 2nd AC, which merely asserts that WCEH previously used a "legitimate" outside anesthesia service company, at some point in time was "presented with the opportunity" to receive anesthesia services through an entity owned by Dr. Choudhry in exchange for referrals, and terminated an anesthesia service contract with its previous outside provider. (Doc. 75). There are no allegations against WCEH of actually receiving any illegal remuneration or making any inappropriate referrals, much less any Rule 9(b) details as to how either activity took place or how WCEH fits into the purportedly illegal "company model." (*Id.*)

Relator's allegations against Dr. Groover are similarly deficient. (Doc. 43). Relator fails to offer any reliable information regarding Dr. Groover's business relationships with the Defendant ambulatory surgery centers or anesthesiologist companies and how any relationship violates the law. (*Id.*). The allegations against those surgery centers and Borland-Groover Clinic, P.A. are similarly bereft of relevant detail. (Doc. 50).

Regarding Advanced Anesthesia Associates, LLC, All Services Anesthesia, LLC, St. Petersburg Endoscopy Center, Physician Endoscopy Holdings, Inc., North Pinellas Surgery Center, LLC, Dr. Choudhry, Clearwater Ambulatory Surgery Centers, Inc., and CURVV, LLC, the 2nd AC fails to allege which entity made any allegedly illegal payments received by which center, does not identify any physician to whom any payment was made, does not specify whether those payments were even associated with Medicare or Medicaid claims, and does not detail when such claims may have been submitted, or if claims were even submitted

at all as a result of the purportedly illegal referrals.  (Doc. 44, 57, 59, 62, 65).  In fact, not surprisingly, Relator does not, and cannot, identify a single false claim.  (*Id.*)

Relator's scant allegations are conclusory assertions from which Relator hopes the court will infer the existence of wrongdoing.  *See e.g.*, (Doc. 71) (explaining that an anesthesiologist generating approximately $500,000 in profit for Safety Harbor Surgery Center, LLC is in no way illegal and that Relator fails to plead this allegation with the requisite particularity); (Doc. 62) (although Relator alleges that "Dr. Choudhry's anesthesia service entities [] provide [] exclusive anesthesia services, while sharing [] revenue with the physician owners," Relator does not explain the illegality of the alleged revenue sharing arrangement or Dr. Choudhry's role in creating it); (Doc. 44) ("Relator apparently assumes that realization of profit from anesthesia services and any overlap among the owners of the ASCs and AAA will lead the Court to infer that there were inappropriate or fraudulent kickbacks for referrals taking place.").

Allowing discovery to move forward at this time, given the tremendous shortcomings of Relator's 2nd AC, would render the particularity requirements of Rule 9(b) a "nullity." *Atkins*, 470 F.3d at 1359–60 ("The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim."); *United States ex rel. Feingold v. Palmetto Gov't Benefits Administrator*, 477 F. Supp. 2d 1187, 1196 (S.D. Fla. 2007) (purposes of Rule 9(b) include protecting defendants from discovery where an insufficiently pled complaint has been filed); s*ee Clausen*, 290 F.3d at 1313, n. 24. Discovery should not be allowed unless and until the Court finds that Relator's 2nd AC meets the particularity requirements of Rule 9(b).

### ii. Relator Fails to State a Claim Upon Which Relief Can Be Granted.

Relator's 2nd AC is similarly deficient because it fails to identify a single false claim or plead any details of any objectively false claims knowingly submitted to Medicare or Medicaid by the Defendants. (Docs. 43, 44, 50, 57, 59, 62, 63, 65, 71, 75). The failure to identify a false claim actually and knowingly submitted to Medicare or Medicaid by a defendant is fatal to a False Claims Act case and underlying AKS claim. *See Clausen*, 290 F.3d at 1311 (affirming dismissal of FCA case under Rule 9(b) due to relator's failure to plead particular false claims); *United States ex rel. Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009) (same); *McInteer*, 470 F.3d at 1357 (same); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (same). Moreover, after three attempts Relator still fails to adequately plead the elements of an underlying AKS violation. (Docs. 43, 44, 50, 57, 59, 62, 63, 65, 71, 75).

Relator asserts that "[o]ver 50% of the procedures performed by the Defendants were reimbursed from government payors, such as Medicare and Medicaid." (Doc. 32, ¶ 53). This does not meet Rule 12(b)(6)'s requirements or Rule 9(b)'s particularity standard requiring descriptions of the who, what, where, and when of the alleged activity, especially given that (i) there are 15 named Defendants in this case; (ii) Relator does not profess to be aware of any of the 15 Defendants' billing practices; and (iii) Relator offers no basis for this assertion. (Doc. 43, 44, 50, 57, 59, 62, 63, 65, 71, 75). Indeed, the governing standard requires the identification of specific false claims. *See, e.g., Clausen*, 290 F.3d at 1311. Relator's sole allegation regarding the submission of claims does not identify a relevant time period, let alone which claims are connected to which of the Defendants. (Docs. 43, 44, 50, 57, 59, 62,

63, 65, 71, 75). As an example of Relator's lack of knowledge of the Defendants, Defendant North Pinellas Surgery Holding Company, LLC, is actually a real estate holding company and does not provide medical services, participate in Medicare or Medicaid programs, and thus cannot and does not file such Medicare or Medicaid claims. (Doc. 63).

To allow this Relator, who has a competitive business interest in pursuing this lawsuit against these 15 Defendants, to proceed forward to gather disclosures and discovery, would be burdensome and frankly unfair to these Defendants unless Relator can allege that a false claim was actually and knowingly submitted to Medicare and Medicaid.

Entering a stay of discovery until the Court determines that Relator has a claim with which it can move forward is appropriate at this juncture.

### iii. Relator Fails To Plead Any Personal Knowledge of Its FCA and FFCA Claims.

As demonstrated in the Motions to Dismiss, Relator's theories of liability in this case are hypotheticals solely based on speculation that financial arrangements between various parties must be like those described in the OIG's Advisory Opinion. Nothing in the 2nd AC suggests that Relator's allegations are based on any personal knowledge of such transactions or of claims for anesthesia services submitted by any party. Complaints lacking a foundation in personal knowledge are subject to dismissal. *See U.S. ex rel. Westfall v. Axiom*, No. 8:06-cv-571-T-33TBM, 2009 WL 1424213, at *5 (M.D. Fla. May 20, 2009) (dismissing FCA claims where relators concluded, without specifically alleging, that defendants submitted false claims to the Government for reimbursement, and relators did not have first-hand knowledge to support such allegations because they neither worked in the defendant-physicians' offices or witnessed the physicians submitting false claims). Relator does claim

that it has "personal knowledge of the facts in this Complaint." (Doc. 32, ¶ 10). But beyond those eight words, the 2nd AC fails to provide support for this assertion. (Docs. 43, 44, 50, 57, 59, 62, 63, 65, 71).

Relator, as a corporate outsider, simply does not have any first-hand knowledge of information that could sufficiently develop its pleadings. Even if there were something to discover, which there is not, providing Relator access to discovery would only enable it to attempt to bolster its unfounded allegations of fraud. *See Keeler*, 568 F. App'x at 803. Discovery is not intended to be a tool to investigate hypothetical theories of liability. Discovery should not be allowed unless and until the Court finds that Relator's 2nd AC pleads allegations of fact demonstrating the requisite personal knowledge to bring a FCA claim. *See Chudasama*, 123 F.3d at 1367; *see also Keeler*, 568 F. App'x at 803.

### iv. The 2nd AC is an Impermissible Shotgun Pleading.

Lastly, Relator, for a third time, impermissibly incorporates all allegations of purported fact and law into all counts against all 15 named Defendants and two anonymous "Doe" Defendants in its 2nd AC. The Eleventh Circuit described shotgun pleadings as "altogether unacceptable" and suggests that courts strike them. *Cramer v. State of Fla.,* 117 F.3d 1258, 1263 (11th Cir. 1997). Due to Relator's corporate outsider status, another attempt at pleading will only result in another impermissible complaint, wasting valuable court resources. *Watson v. HSBC Card Servs., Inc.*, No. 3:10-CV-985-J-34JBT, 2010 WL 4337911, at *1 (M.D. Fla. Oct. 27, 2010) (shotgun pleadings impede the court's ability to administer justice, waste judicial resources, and should be stricken). Judge Dalton recently dismissed a *qui tam* complaint as an impermissible shot gun pleading. *See Order, U.S. ex rel.*

*John Doe, v. Health First, Inc., et al.*, No. 6:14-cv-501-Orl-37DAB, at *1 (M.D. Fla. July 22, 2016) (Dalton, J.) (Doc. 118) (finding "Relator's shotgun style pleading [] particularly problematic" given the number of Defendants (10) and expansive time period (15 years) in the amended complaint). Again, this argument in Defendants' Motions to Dismiss serves as an additional facial challenge to the sufficiency of Relator's claims and should be resolved prior to allowing discovery to proceed. *See Chudasama*, 123 F.3d at 1367.

C.     **Relator Will Not Be Prejudiced by a Stay, but Defendants Would be Burdened and Prejudiced Should Discovery Commence at this Time.**

A stay of discovery will not prejudice Relator. No discovery deadlines have been imposed by the Court at this time. Relator has not demonstrated any need for discovery before the Court rules on the sufficiency of its 2nd AC, particularly as prior to this point Relator elected to revise and amend its pleadings. *See Minton v. Jenkins*, No. 5:10-cv-61, 2011 WL 2038700, at *2 (N.D. Fla. May 24, 2011) ("The matters raised in Defendants' motion to dismiss and Plaintiff's response demonstrate that neither the parties nor the court have any need for discovery before the court rules on the motion to dismiss."). Moreover, in the unlikely event that some portion of Relator's 2nd AC survives the Motions to Dismiss, nothing would prevent the parties from commencing discovery within a reasonable period of time. *See Moore v. Shands Jacksonville Med. Ctr., Inc.*, No. 3:09-cv-298-J-34TEM, 2009 WL 4899400, at *2 (M.D. Fla. Dec. 11, 2009) (granting stay of discovery pending resolution of motion to dismiss where plaintiffs would not be prejudiced because the parties would have sufficient time for discovery should the case survive the motion).

On the other hand, moving forward with the pretrial process and discovery at this time would burden and prejudice the Defendants. Even if Relator's 2nd AC survives in part,

the issues and Defendants relevant to this litigation will not be known until after rulings on the Motions to Dismiss, and in a *qui tam* action discovery should "be limited and tailored to the specificity of the complaint." *Bane*, 2008 WL 4057549, at *1. Defendants would be required to expend unnecessary time and money responding to intrusive discovery targeted at attempts to bolster Relator's pleadings, extract settlements, or otherwise gain leverage against its business competitors. *See Clausen*, 290 F.3d at 1313, n. 24 ("When a plaintiff does not specifically plead the minimum elements of their allegation, it . . . may needlessly harm a defendants' goodwill and reputation by bringing a suit that [contains] baseless allegations used to extract settlements."). Relators are not entitled to a free pass to discovery to attempt to develop otherwise insufficient pleadings. *See Keeler*, 568 F. App'x at 803.

Consequently, permitting discovery before first determining whether Relator has a viable FCA claim, and if so, against which Defendants and for what specific time periods, will burden and prejudice Defendants. Since Relator does not have the requisite facts to satisfy Rule 9(b) as to any Defendant, Relator seeks to build its case on the backs of the Defendants. For example, of the 10 businesses at issue, each has its own separate records management system. As these are operating business and working physicians, the Defendants have performed thousands of procedures at their ambulatory surgery centers during this indefinite time period. In turn, searching for something they do not have and based on the open-ended and conclusory pleadings of the 2nd AC, Relator's counsel will likely craft numerous broad and intrusive discovery requests, forcing Defendants to file motions for protective orders to try to define and narrow the issues and the time period. Such

motions will likely lead to hours invested by the Court to resolve these anticipated disputes. Conversely, Relator can show no prejudice by stay of discovery.

**D.**     <u>The Case Management Conference Should Be Stayed and Continued</u>

The Case Management deadlines should also be stayed and extended. The 2nd AC raises allegations of fraud against multiple corporate and individual Defendants by a business competitor of the Defendants with no insider knowledge of the Defendants. As discussed above, Defendants' Motions to Dismiss should dispose of the case entirely or remove any number of counts, allegations, or Defendants from the case. To move forward with a Case Management Conference and consequent reports and disclosures at this juncture would likely result in this Court having to address conflicts stemming from disagreement among the parties on the scope of discovery, depositions, and case scheduling. Just as moving forward with discovery would be burdensome and wasteful, so too would requiring a Case Management Conference and corresponding reports and disclosures while dispositive motions remain pending. *See Chudasama*, 123 F.3d at 1368 (recognizing that "[a]llowing a case to proceed through the pretrial process with an invalid claim" wastes resources of the litigants and the court).

Courts have broad discretion to stay proceedings in connection with their inherent authority to manage their dockets. *Riley v. Rutherford*, 2010 WL 4054140, at *1 (M.D. Fla. Oct. 15, 2010) (internal citations omitted) (granting defendant's motion to stay discovery, including the filing of a case management report, until the court ruled on the two pending motions to dismiss in that case). Defendants respectfully request that the Case Management

Conference and ensuing disclosure deadlines be continued until 20 days after the last of the motions to dismiss directed to the complaint are disposed of by this Court.

## III.  CONCLUSION

Given the ten pending dispositive Motions to Dismiss, (Docs. 43, 44, 50, 57, 59, 62, 63, 65, 71, 75), all of which have the potential to dispose of the case entirely or alter the claims pled and Defendants involved in this suit, the Court should stay discovery and continue the case management deadlines until it disposes of the last motion to dismiss directed to the complaint in this matter.

WHEREFORE, Defendants respectfully request the entry of an Order staying discovery until the last motion to dismiss directed to the 2nd AC, and successor complaints as necessary, in this action is disposed of and extending the case management deadlines until 20 days after such date and for such other and further relief as this Court deems just and proper.

Dated: July 29, 2016

Respectfully submitted,

*/s/ Adam P. Schwartz*
Adam P. Schwartz (**Trial Counsel**)
Florida Bar No. 83178
Blaise N. Gamba
Florida Bar No. 27942
Erin J. Hoyle
Florida Bar No. 117762
CARLTON FIELDS JORDEN BURT, P.A.
P.O. Box 3239
Tampa, FL 33601-3239
Telephone:  813.223.7000
Facsimiles:  813.229.4133
E-mail: aschwartz@carltonfields.com
          bgamba@carltonfields.com

ehoyle@carltonfields.com

*Counsel for Advanced Anesthesia Associates LLC, and All Services Anesthesia, LLC*

Jack E. Fernandez, FBN: 843751
Mamie V. Wise, FBN: 65570
ZUCKERMAN SPAEDER LLP
101 East Kennedy Boulevard, Suite 1200
Tampa, Florida 33602
Telephone: 813.221.1010
Facsimile: 813.223.7961
Email: jfernandez@zuckerman.com
        mwise@zuckerman.com

*Counsel for Dr. Umesh Choudhry and CURVV, LLC*

Douglas Jules Titus, Jr., FBN: 213756 (Trial Counsel)
Peter Erik George, FBN: 517938
George & Titus, PA
100 S. Ashley Dr., Suite. 320
Tampa, FL 33602
Telephone: 813.273.0355
Facsimile: 813.276.1515
Email: dtitus@georgeandtitus.com
        pgeorge@georgeandtitus.com

*Counsel for North Pinellas Surgery Center, LLC and North Pinellas Surgery Center Holding Company, LLC*

Edmund T. Baxa, Jr., FBN: 313378
Foley & Lardner, LLP
111 North Orange Avenue, Suite 1800
Orlando, FL 32801
Telephone: 407.423.7656
Facsimile: 407.648.1743
Email: ebaxa@foley.com
        jmiller@foley.com

*Counsel for West Coast Endoscopy Holdings, LLC*

Ruel W. Smith, FBN: 36548
Hinshaw & Culbertson, LLP
100 South Ashley Dr., Ste. 500
Tampa, FL 33602-5301
Telephone: 813.276.1662
Facsimile: 813.276.1956
Email: rsmith@hinshawlaw.com

and

Brian Zeeck (*pro hac vice*)
Daniel M. Purdom (*pro hac vice*)
Hinshaw & Culbertson, LLP
222 N. LaSalle St., Ste. 300
Chicago, IL 60601-1081
Telephone: 312.704.3000
Email: bzeeck@hinshawlaw.com
         dpurdom@hinshawlaw.com

*Counsel for Safety Harbor Surgery Center, LLC*

Gabriel Imperato, FBN: 623652
Broad and Cassel
One Financial Plaza, Suite 2700
100 S.E. Third Avenue
Fort Lauderdale, FL 33394
Telephone: 954.764.7060
Facsimile: 954.761.8135
E-Mail: gimperato@broadandcassel.com

*Counsel for St. Petersburg Endoscopy Center, LLC and Physicians Endoscopy Holdings, Inc.*

Gregory W. Kehoe, FBN: 0486140
Danielle S. Kemp, FBN: 0474355
Greenberg Traurig, P.A.
101 East Kennedy Blvd., Suite 1900
Tampa, FL 33602
Telephone: 813.318.5700
Facsimile: 813.318.5900
Email: kehoeg@gtlaw.com
         kempd@gtlaw.com

*Counsel for Jack Groover*

Robert H. Pritchard, FBN: 890367 (Trial Counsel)
Janet C. Owens, FBN: 0099592
1301 Riverp1ace Boulevard, Suite 1500
Jacksonville, Florida 32207
Telephone: 904.398.3911
Facsimile: 904.396.0663
Email: rpritchard@lilaw.com
        jowens@rtlaw.com

and

Jonathan L. Diesenhaus (*pro hac vice*)
Hogan Lovells US LLP
555 13th Street, N.W.
Washington, DC 20004
Telephone: 202.637.5416
Facsimile: 202.637.5910
Email: jonathan.diesenhaus@hoganlovells.com

*Counsel for Jax Anesthesia Providers, LLC, Borland-Groover Clinic, and Southpoint Anesthesia, LLC*

Michael A. Igel, FBN: 30405
Johnson Pope
333 3rd Ave N, Ste 200
St. Petersburg, FL 33701
Telephone: 727.483.5691
Facsimile: 727.800.5981
Email: migel@jpfirm.com

*Counsel for Clearwater Ambulatory Surgery Center, Inc.*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), on July 28, 2016, counsel representing the

Defendants conferred with counsel for Relator, Christopher Casper, in a good faith attempt to

resolve this issue.  Counsel for Relator advised counsel for Defendants that Relator opposes the relief requested herein.

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2016, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system thereby serving all registered users in this case.

*/s/ Adam P. Schwartz*
Adam P. Schwartz
Florida Bar No. 83178