IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; THE STATE OF FLORIDA; ex rel. Florida Society of Anesthesiologists,<br><br>Plaintiffs,<br><br>Vs.<br><br>Umesh Choudhry, an individual; Curvv, LLC, a Florida Limited Liability Company; Advanced Anesthesia Associates, LLC, a Florida Limited Liability Company; All Services Anesthesia, LLC, a Florida Limited Liability Company; North Pinellas Surgery Center, LLC, a Florida Limited Liability Company; North Pinnellas Surgery Center Holding Company, LLC, a Florida Limited Liability Company; St. Petersburg Endoscopy Center, LLC, a Florida Limited Liability Company; West Coast Endoscopy Centers Holdings, LLC, a Florida Limited Liability Company; Safety Harbor Surgery Center, LLC, a Florida Limited Liability Company; Clearwater Ambulatory Surgery Centers, Inc., a Florida corporation, dba Clearwater Endoscopy Center; Physicians Endoscopy Holdings Inc., a Florida Corporation; Jack Groover, an Individual; Jax Anesthesia Providers, LLC, a Florida Limited liability Corporation; Borland-Groover Clinic, a Florida Corporation; Southpoint Anesthesia, LLC, a Florida Limited Liability Corporation; John Doe 1-1000; Jane Doe 1-1000,<br><br>Defendants. | Civil Action No.<br><br>8:13-cv-2603-T-27AEP<br><br><br><br>JURY TRIAL DEMANDED |

# RELATOR'S RESPONSE IN OPPOSITION TO CLEARWATER AMBULATORY SURGICAL CENTER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND REQUEST FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

Relator the Florida Society of Anesthesiology ("FSA") files this response in opposition to Clearwater Ambulatory Surgical Center's Motion to Dismiss the Second Amended Complaint ("Motion"). (Doc. 90) For the reasons stated below, the Motion by Clearwater Ambulatory Surgical Center ("Clearwater") should be denied because the Second Amended Complaint ("SAC") sufficiently pleads violations of the False Claims Act ("FCA") with the factual specificity and plausibility required by Federal Rules of Civil Procedure 8(a)(2) and 9(b). To the extent the Court concludes it does not, FSA renews its earlier request for leave to file the attached Third Amended Complaint ("TAC"), which adds significant factual detail about the scheme in question.

## I. PRELIMINARY STATEMENT

Clearwater is a Defendant in the Chouhdry Ring. Clearwater's Motion rests substantially on the same arguments advanced by the Choudhry Defendants, which were the subject of a consolidated response by Relator. See Doc. 87 ("Consolidated Response"). To avoid repetition, Relator fully adopts the Consolidated Response as its Response to Clearwater's Motion to Dismiss and submits the instant brief as a supplement to the Consolidated Response.

## II. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) does not require a plaintiff to prove its case through its complaint. It simply tests the legal sufficiency of the pleading (i.e., did the plaintiff allege all of the elements of liability in a cause of action that is legally

2

cognizable). As such, in reviewing a motion to dismiss under Rule 12(b)(6), the court does not weigh the proofs. Instead, a court shall accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted); *Bryant v. Avado Brands, Inc.*, 187 F.3d. 1271, 1274 n.1 (11th Cir. 1999).

The legal sufficiency of the allegations for purposes of 12(b)(6) is evaluated in the context of Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim showing that the plaintiff is entitled to relief, thereby giving the defendant fair notice of the basis for relief. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court has clarified that in order to satisfy Rule 8(a)(2) at the motion to dismiss stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S at 556-57). The plausibility standard is not a probability standard. It "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim." *United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*, 2010 WL 2245574 at *2 (N.D. Ga. June 2, 2010) (quoting *Twombly*, 550 U.S. at 545) (internal quotations omitted).

The court must also evaluate the sufficiency of the allegations for purposes of 12(b)(6) in the context of Federal Rule of Civil Procedure 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud and mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Thus, allegations that a defendant violated the FCA must give defendants notice of the "precise misconduct with which they

are charged…" *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

As to the elements of the claims at issue here, the standard for pleading an AKS violation, which is the predicate for a violation of the False Claims Act, is as follows:

> To plead a violation of the Anti-Kickback Statute, the Relator must allege that (1) [defendant] knowingly and willfully (2) offered or paid any remuneration (3) to induce a physician to refer a patient for services that may be paid by a federal health care program. *See* 42 U.S.C. § 1320a-7b(b)(2)… Relator alleges that [defendant] paid remuneration "knowingly and willfully" because [defendant] certified compliance with the Anti-Kickback Statute by submitting "false certifications and representations on claim forms or their electronic equivalents and cost reports ….This allegation has been deemed to be sufficient to satisfy the first prong of the Anti-Kickback Statute. *See Baycare*, 2015 WL 4878456, at * 6; *see also U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, 2012 WL 2871264, at * 6 (S.D. Fla. July 12, 2012) (*Tenet I*) (finding sufficient to allege a claim under the Anti-Kickback Statute Relator's allegation that Defendant falsely certified compliance with the Anti-Kickback Statute).

*United States Bingham v. HCA, Inc.*, 2016 WL 344887, at *6-7 (S.D. Fla. Jan. 28, 2016) (some internal citations omitted). The Second Amended Complaint adequately pleads all of the elements of AKS (as a predicate to FCA liability).

Finally, to plead a cognizable claim under the FCA's *false claims* provision, 31 § U.S.C. 3729(a)(1)(A), Relator must further plead that the Defendants (1) submitted, caused to be submitted, or conspired to submit or cause to be submitted false claims or false statements; (2) did so knowingly; (3) the claims were factually or legally false; and (4) the falsity was material to payment. See, e.g., M. Navarro and J. Marc Vezina, *What Is Qui Tam*, ABA Health Law Section, 8-19 (2015). The difference between an FCA violation for a false claim under (a)(1)(A) and a false statement under (a)(1)(B) is that a claim that is false because it advances a right to payment for something that is

4

unreimbursable (as is the case with claims for services tainted by kickbacks) – an (a)(1)(A) claim – is also actionable as a *false statement* under (a)(1)(B) if it also contains a factual falsity. Certifying compliance with the law despite having violated the AKS is a factual falsity which is also actionable under (a)(1)(B). See, e.g., M. Navarro and J. Marc Vezina, *What is Qui Tam* at 8-11.

Relator met all these pleading requirements.

### III. ANALYSIS

**1. FSA is not required to plead or prove it is an original source.**

As a preliminary matter, Clearwater argues that FSA's pleadings are deficient because Relator did not plead that it is an original source of the information. Clearwater misapprehends the role of "original source" in FCA jurisprudence.

The FCA disallows actions that are based on public disclosures. In FCA parlance, this is commonly refer to as the "public disclosure bar." See, e.g., M. Navarro and J. Marc Vezina, *What Is Qui Tam*, ABA Health Law Section, 28-30 (2015); see also 31 U.S.C. § 3730(e)(4)(A)(i)-(iii) (Certain Actions Barred). The public disclosure bar is an affirmative defense because it is in the nature of an avoidance, rather than a denial of the fraud averments. See Fed. R. Civ. P. 8(c). In other words, even if everything Relator says is true and legally sufficient to state a claim for fraud, Clearwater would be able to escape liability if Relator's allegations were based on a public disclosure which is, thus, an affirmative defense. The FCA provides, however, that a relator can overcome the public disclosure bar if he is an original source of the allegations. See Navarro and Vezina, *What Is Qui Tam*, at 31; 31 U.S.C. § 3730(e)(4)(A)(iii) (actions based on public disclosures barred "unless…the person bringing the action is an original source of the

information"). Thus, the status of a relator as an original source is only relevant if and only after a Defendant pleads public disclosure as an affirmative defense. In this case, Clearwater has not answered the Complaint, let alone pled affirmative defenses. Accordingly, FSA has no reason to nor is required to plead that it is an original source.

Further, whether or not a relator is an original source is a legal conclusion which rests on two things: the relator voluntarily providing the information to the government prior to the public disclosure, 31 U.S.C. § 3730(e)(4)(B)(i), or the relator having knowledge that is independent of and materially adds to the publically disclosed allegations and who provides same to the government prior to filing its action, 31 U.S.C. § 3730(e)(4)(B). See also Navarro and Vezina, *What Is Qui Tam*, at 31. Relator's Second Amended Complaint ("SAC") avers both. SAC ¶ 2 (FSA voluntarily submitted all information in its possession to the government prior to filing the complaint); SAC ¶ 10 (FSA has direct knowledge).

It is a well-settled principle that FSA can acquire direct knowledge through its members:

> No courts have held that corporations responsible for the discovery of information cannot have "direct knowledge" because they have to act through agents. In fact, corporate plaintiffs have been held to have direct knowledge making them an original source. In *Springfield Terminal Railway Co.,* 14 F.3d at 657, the District of Columbia Circuit held that a corporate relator had sufficiently direct knowledge of information to be an original source. *Accord United States ex rel. Durcholz v. FKW Inc.,* 997 F. Supp. 1159, 1166 (S.D.Ind.1998). Moreover, in *Barth* one relator was a labor union; although we held that the union had no direct knowledge of the information because its representative did not have such knowledge, we did not suggest organizations can never be original sources. 44 F.3d at 703–04. There is no hint in the history of the 1986 Amendments Act that Congress intended to disqualify organizational relators. To the contrary, any such rule would have disqualified the State of Wisconsin from proceeding as relator in *Dean* and so would defeat one of the announced motivations behind the 1986

> Amendments Act. Though organizations must, of course, act through agents, this does not render their knowledge parasitical or their agency "intervening" in the sense of interrupting the causal connection between the corporation's efforts and the knowledge. *See Black's Law Dictionary* 212 (7th ed.1999) ("intervening cause" or "intervening agency" is "An event that comes between the initial event in a sequence and the end result, thereby altering the natural course of events that might have connected a wrongful act to an injury").

*Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1049 (8th Cir. 2002). Further:

> The Court finds no merit in defendants' argument that Branch's status as a corporation deprives it of ability to have direct knowledge. Defendants cite to *Federal Recovery Services* as well as the Tenth Circuit case of *United States ex rel. Precision Co. v. Koch Industries, Inc.,* 971 F.2d 548 (10th Cir.1992). Neither case stands for the proposition that corporations cannot have direct knowledge of fraud. In fact, in both cases the court analyzed whether the corporation actually did have direct knowledge, but concluded that it did not because the corporation could not have had direct knowledge of anything that took place before its incorporation, and all post-incorporation knowledge would have been "the product and outgrowth" of investigations that began before the corporation came into existence. *Fed'l Recovery Servs.,* 72 F.3d at 451–52; *see also Precision,* 971 F.2d at 554. Neither court holds that a plaintiff's corporate status, without more, would have foreclosed its claims. In addition, other courts have affirmatively held that a corporate relator can have direct knowledge under the FCA. *See, e.g., Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.,* 276 F.3d 1032, 1049 (8th Cir.2002) ("No courts have held that corporations responsible for the discovery of information cannot have 'direct knowledge' because they have to act through agents.").

*U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 801 (E.D. La. 2009). In sum, there is no pleading legal deficiency here.

### 2  The allegations of wrongdoing against Clearwater are clear, reliable and state a claim.

It is unquestionable that Choudhry has provided anesthesia services at Clearwater through his companies AAA/Coastal since early 2012 and has billed for those services. Further, there is ample evidence that Choudhry obtained Clearwater's anesthesia referrals

7

through the payment of kickbacks. The details surrounding the foregoing, including Choudhry's modus operandi and the sources of the information, have been detailed extensively in the Second (and Third) Amended Complaint, amply giving Clearwater notice of its wrongdoing; to wit, receiving remuneration from Choudhry in exchange for providing Choudhry with anesthesia referrals, a violation of AKS and the FCA.

To recap, FSA members and other witnesses personally observed Choudhry (through Sean Singh) driving the replacement of the two independent anesthesia companies (Bay Area Anesthesia (BAA) and Anesthesia Associates of Pinellas County (AAPC) that served the five separate ASCs at issue in this case, including Clearwater which was served by BAA prior to it being replaced by Choudhry. After the anesthesia providers were asked to but declined to give up a portion of their anesthesia revenue as a condition to practice in the ASCs in early 2012, the anesthesia providers in all five of the ASCS, Clearwater included, contemporaneously replaced them with the five Choudhry company model companies at issue in this case; in Clearwater's case, that Choudhry company was Coastal Anesthesia. See SAC ¶¶ 67-77, TAC ¶¶77-95. Following said replacements, referrers of anesthesia services (including but not limited to Dr. John Ahn and Dr. Anoop Goyal) openly bragged to FSA members about their participation in anesthesia revenue with Choudhry. See TAC ¶124. Further, following said replacement, FSA members observed Choudhry, through AAA and Sean Singh, exercise complete control over the ASC anesthesia operations, including Clerwater's. See TAC ¶127. In sum, the purpose, pattern, and practice of Choudhry's anesthesia practices at the ASCs, including Clearwater, are well documented.

8

Admittedly, FSA has more detail about Choudhry's internal activities at North Pinellas ASC and Safety Harbor ASC, than it does with respect to Chouhdry's internal activities at Clearwater ASC. However, the consistency of the kickback offers by Sean Singh, the string and the timing of the terminations (which included BAA's termination from Clearwater) following Sean Singh's solicitation of the ASCs, and the bragging of the surgeons at the ASCs following Choudhry's replacement of the independent anesthesia companies at the ASCs is too consistent a pattern of conduct and too consistent in timing for Clearwater to escape it.

To the foregoing, Clearwater argues that it is unfair for FSA to lump it with the other ASCs. This is a vacuous argument. FSA did not choose the timing and manner in which Clearwater became involved with Choudhry. Clearwater placed itself in the middle of the Choudhry ring by inexplicably replacing its own independent anesthesia company (BAA) with the Choudhry company (Coastal) *at the precise time* that Sean Singh was going around soliciting the other local ASCs for their anesthesia business in exchange for kicking back anesthesia revenue. Further, it was Clearwater that put itself in the middle of the Choudhry ring when surgeons conducting surgeries there bragged about their anesthesia revenues, even though they were not anesthesiologists. The only logical inference under these circumstances is what FSA has alleged: that Clearwater, like the other four ASCs, replaced BAA with Choudhry in order to participate in the anesthesia kickback scheme.

Notwithstanding these facts, Clearwater wants the Court to infer that that it was the only ASC which replaced BAA with a Choudhry company (Coastal) at the very same time that the other ASCs did it for kickbacks for a different *lawful* reason. Rule 12(b)(6)

does not allow the Court to make such an inference because it is completely unreasonable in a Rule 12(b)(6) motion. See, e.g., *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (a court shall accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff). To the contrary, the Court is required to make the opposite inference in favor of FSA – that Clearwater like the other ASCs gave its anesthesia business to Choudhry because of the kickbacks.

Moreover, "[o]nce a plaintiff has satisfied Rule 9(b) as to one scheme, the purposes behind the rule have been served. Requiring the level of specificity sought by the Defendant would undermine the False Claims Act's goal of encouraging people with knowledge of undisclosed fraud to come forward." *U.S. ex rel. Longest v. Dyncorp*, 2006 WL 47791 at *5 (M.D. Fla. 2006) (citing *Clausen*, 290 F.3d at 1310, n. 17); see also *U.S. ex rel. Heater v. Holy Cross Hosp.*, Inc., 510 F. Supp. 2d 1027, 1036 (S.D. Fla. 2007) ("While it is true that Heater does not support the remaining allegations in the Amended Complaint … with any specificity, the Court disagrees with Defendants' legal argument. Relying on *United States v. Dyncorp Int'l, LLC*, Heater asserts that all allegations can survive Holy Cross's Motion to Dismiss if at least some of the claims are pled with specificity sufficient to satisfy the requirements of Rule 9(b). The Court agrees, despite Defendants' arguments to the contrary. The Court is now convinced that Heater has stated a claim with regard to Counts I, III, V and VII in his Second Amended Complaint.") (internal citations omitted).

Here, FSA has satisfied Rule 9(b) as to the main scheme: Choudhry's. Certainly, to the extent the Second Amended Complaint is short in details, the Third Amended Complaint details conversations between FSA members and Safety Harbor ASC

owner/referrers, both pre-and post- termination of BAA, where ASC owner/referrers openly admit they are "going for it" (referring to the company model with Choudhry) because no one had "gone to jail" doing it. See TAC at ¶¶96-105, 123-125. Further, the Third Amended Complaint details conversations between FSA members and North Pinellas ASC owner/referrers pre-termination of BAA where the ASC owner/referrers openly admit to BAA members that they "realize quality will suffer [with Choudhry's company] but they can't leave money on the table." See TAC at ¶¶82-88. This is significant direct evidence of Choudhry's kickback business model and sets the circumstances of Choudhry's dealings with Clearwater, given that at the same time as these conversations were happening, *Clearwater, like Safety Harbor and North Pinellas ASCs, inexplicably and simultaneously replaced BAA with Choudhry*. In sum, given the clarity with which Choudhry's conduct has been pled, there is sufficient direct and circumstantial evidence as to Clearwater's involvement in the scheme to satisfy Rule 9(b) under *Clausen* and its progeny. See, e.g., *U.S. ex rel. Longest v. Dyncorp*, 2006 WL 47791 at *5 (M.D. Fla. 2006) (citing *Clausen*, 290 F.3d at 1310, n. 17) (details as to one scheme relaxes the pleading burdens as to a related one).

Consistent with the foregoing, the Second (and Third) Amended Complaint makes allegations against Choudhry individually; his company model companies (AAA and the five sub-entities used to track anesthesia referrals per ASC, including Coastal); and the five surgery centers (and corresponding holding companies) including Clearwater, which then switched their anesthesia referrals to Choudhry. The Second Amended Complaint appropriately lists John Doe entities because, given the discovery of four additional sub-anesthesia companies controlled by Choudhry (including Coastal) as

an added layer of entities now known to have been interposed in this scheme,[1] it is probable that there are additional entities involved in the fraud which have been put on notice of that possibility through the John Doe pleadings.

Given the foregoing, the claim against Clearwater satisfies Rule 9(b) and should stand. A dismissal of Clearwater would mean that the Court has presumed Clearwater to be the only ASC engaged in clean business dealings with Choudhry despite the sea of corruption surrounding Choudhry's activities at the time. Respectfully, that conclusion would a perversion of Rule 9(b).

> **3. It is not unlawful to make money in the practice of medicine, but it is unlawful to pay for and receive remuneration for referrals.**
>
> **A. Clearwater's conduct is a prima facie violation of AKS**

Clearwater argues that the OIG's guidance against company model practices cannot be used against Clearwater because it is not precedential as to any other entity besides the requestors of the OIG opinion. As briefed in the Consolidated Response, FSA relies on the AKS, not the OIG guidance as a basis for liability. Certainly, however, the OIG guidance is instructive to the Court as to *suspect* nature of Clearwater's arrangement with Choudhry, particularly in light of the extensive evidence of kickback demands and payments by Choudhry in the case.

In this regard, the position advanced by Clearwater in its brief that the OIG "did not impose a per se ban on this practice" is very telling. See Doc. 90 at n.8. This position suggests that *Clearwater did engage in a company model with Choudhry*, albeit

---

[1] Clearwater makes much to do about an error that caused FSA to list it by an incorrect name. The error was corrected in previous iteration of the complaint and is nothing out of the ordinary in a case that involves numerous entities.

one which Clearwater believes that the OIG has not "per se banned." If so, that is not a basis for dismissal in this Rule 12(b)(6) motion. It is, instead, an affirmative defense which Clearwater must plead and demonstrate. See *United States v. Halifax Hosp. Med. Ctr.*, 2012 WL 921147 at *5 (M.D. Fla. Mar. 19, 2012) (exceptions need not be denied in the initial pleadings; rather, they are affirmative defenses that must be raised by the Defendants).

### B. The AKS violation has been appropriately pled

Specifically, the AKS does not require for the FSA to plead around alleged permissible relationships. The case law is clear in this regard. See, e.g., *U.S. ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 395, 405 (4th Cir. 2012) (having pled with specificity that an improper financial relationship exists, the burden shifts to the defendant to establish that the conduct was permitted by an enumerated AKS exception, such as the group practice exception).

To plead a violation of the Anti-Kickback Statute as a predicate of FCA liability, the Relator must allege that (1) [defendant] knowingly and willfully (2) offered or paid (or received) any remuneration (3) to induce a physician to refer a patient for services that may be paid by a federal health care program. *See* 42 U.S.C. § 1320a-7b(b)(2); *United States Bingham v. HCA, Inc.*, 2016 WL 344887 at *6-7 (S.D. Fla. Jan. 28, 2016). FSA has pled all such AKS elements reliably as to Clearwater. To the extent information is in the exclusive possession of Clearwater, such as information relating to the sums and conduits by which the kickbacks were paid, Relator is not required to plead it with specificity under Rule 9(b):

Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.' *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.,* 755 F.Supp. 1040, 1052 (S.D.Ga.), *reconsideration granted,* 755 F.Supp. 1055, 1058–59 (S.D.Ga.1990) (finding that Rule 9(b) applies to the FCA as amended in 1986); *see also United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir.1999) ("We have held that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed...."). In that instance, the plaintiff may plead based upon information and belief, *Epic Healthcare Mgmt. Group,* 193 F.3d at 308, provided that she "accompan[ies][her] legal theory with factual allegations that make [her] theoretically viable claim plausible," *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir.2002) (emphasis omitted) (internal quotation marks omitted); *see also Lab. Corp. of Am.,* 290 F.3d at 1314 n. 25 (recognizing that "a more lenient pleading standard" is appropriate under Rule 9(b) when "evidence of fraud [i]s uniquely held by the defendant" provided that "the complaint ... set [s] forth a factual basis for such belief" (internal quotation marks omitted)).

*Hill v. Morehouse Med. Associates, Inc.*, 2003 WL 22019936 at *3 (11th Cir. Aug. 15, 2003).

### C. Clearwater's conduct is a prima facie violation of the FCA

As with the AKS, FSA has reliably pled a claim under the FCA. To wit, FSA pled that Clearwater, directly and through Choudhry's companies, (1) submitted, caused to be submitted, or conspired to submit or cause to be submitted false claims or false statements; (2) did so knowingly; (3) the claims were factually or legally false; and (4) the falsity was material to payment. See, e.g., M. Navarro and J. Marc Vezina, *What Is Qui Tam*, ABA Health Law Section, 8-19 (2015). These allegations have all been in included in the Second Amended Complaint.

In this regard and like the other Choudhry Defendants, Clearwater argues that FSA's failure to submit specific bills by Clearwater should result in dismissal. As briefed in the Consolidated Response, however, specific bills are not necessary to meet Rule 9(b)

in this case. As the United States District Court in the Southern District of Florida Court explained long after *Clausen*:

> "[T]he fraud alleged in this action **does not** depend as much on the particularized billing content of any given claim." *Baycare*, 2015 WL 4878456, at *4. **Instead, "improper relationships with referring physicians taint every claim submitted as a result of those referrals."** *Id.* While Relator has not provided specific samples of false claims submitted by HCA, the facts alleged provide sufficient "indicia of reliability" that HCA submitted false claims to the government for payment. Relator has thus stated a claim under the FCA…

*United States Bingham v. HCA, Inc.*, 2016 WL 344887 at *8 (S.D. Fla. Jan. 28, 2016) (emphasis added). Accord *United States ex rel. Walker v. R & F Properties of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005) (identifying individual false claims not necessary to meet 9(b). The first prong of FCA liability is satisfied in this case.

FSA has also pled that the submissions of the false claims was knowing. This is not a specific intent standard. Acting in reckless disregard of the law which prohibits the payment of remuneration if *one* purpose is to induce referrals for services covered by government programs, as FSA has pled, is a knowing violation of the FCA. See 31 U.S.C. § 3729(b)(1).

Finally, FSA has pled that the claims were legally false and material to payment because anesthesia services tainted by kickbacks are not reimbursable as a matter of law. See, e.g., *U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, 2013 WL 1289260 at *6 (S.D. Fla. March 27, 2013) (agreeing with First Circuit that AKS compliance is a condition of payment and violation of AKS is a falsehood that is a basis for FCA liability).

In sum, the Second Amended Complaint (and the Proposed Third Amended Complaint) more than adequately pleads a violation of the FCA and gives Clearwater

ample notice of the complained conduct, which is the overarching purpose behind Rule 9(b).

### 4. The Department of Justice has not "declined" this case

Finally, Clearwater's representation that the government declined this case is not only irrelevant to this Motion, but is also false. The Department of Justice through the U.S. Attorney's Office has notified this Court that its investigation is continuing and ongoing. See Doc. 2. Indeed, the unsealing in this case did not result from a DOJ declination, but rather from the Court declining to extend the seal in order to allow the government more time to investigate. The Choudhry Defendants, including Clearwater, are actively continuing to provide witnesses and documents to the government as part of its ongoing and active investigation into the alleged conduct.

## CONCLUSION

Based on the foregoing, Clearwater's Motion should be denied unconditionally and leave to file the Third Amended Complaint should be granted.

Respectfully submitted,

s/ Christopher Casper
JAMES HOYER, P.A.
Christopher Casper
FBN: 048320
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609
Phone: (813) 397-2300
Fax: (813) 397-2310
ccasper@jameshoyer.com

*Local Counsel for Relator*

VEZINA LAW GROUP
Monica P. Navarro
J. Marc Vezina
280 N. Old Woodward Ave., Ste. LL20
Birmingham, MI 48009
Phone: (248) 558-2700
Fax: (248) 232-1581
mnavarro@vezinalaw.com
jmv@vezinalaw.com

*Lead Counsel for Relator*
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on August 24, 2016 with the Middle District of Florida CM-ECF system, and will be served via CM-ECF e-notification on all counsel of record.

s/ Christopher Casper