UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
THE STATE OF FLORIDA,
*ex rel.* FLORIDA SOCIETY OF
ANESTHESIOLOGISTS,

    Plaintiffs,                           Case No.: 8:13-cv-2603-T-27AEP

    v.

UMESH CHOUDHRY, *et al.*

    Defendants.
_____/

## UNITED STATES' STATEMENT OF INTEREST

The United States, by and through the undersigned counsel, hereby files this Statement of Interest to address two discrete legal issues under the False Claims Act, 31 U.S.C. § 3729, *et seq.* (FCA), which are implicated by the defendants' motions to dismiss the relator's Second Amended Complaint and the relator's responses in opposition thereto.[1]  Aside from these issues, the government does not take a position at this point regarding the other matters raised by the parties, including those pertaining to the sufficiency of the relator's Second Amended Complaint.  In light of the limited nature of this submission, however, the United States respectfully reserves the right to address any issues

---

[1] The United States is the "real party in interest to an FCA suit, regardless of whether it has intervened," and, as such, is permitted to file a statement of interest with respect "to items relevant to preserving its interests" and to "assist[] the Court in acting in the broader context of FCA jurisprudence." *United States ex rel. McCready v. Columbia/HCA Healthcare Corp.,* 251 F. Supp.2d 114, 119-120 (D.D.C. 2003) (approving government's filing of statement of interest in declined *qui tam* action).

raised in this litigation which are not addressed in this submission should the government ultimately elect to intervene in the action.

## BACKGROUND

The background of this case is familiar to the Court and therefore need only be briefly summarized here.

Relator Florida Society of Anesthesiologists filed the instant *qui tam* action in November 2013, alleging that the defendants named in its complaint[2] had violated the FCA by paying and receiving kickbacks in connection with their referral of patients from various defendant-owned ambulatory surgical centers to various defendant anesthesia service providers. The United States subsequently obtained a number of extensions of the seal and intervention deadline from the Court so that the government could investigate the matter.

In March 2016, after being advised by the Court that the seal and intervention would not be extended any further, the United States filed a notice of "no decision," informing the Court that the government had not yet completed its investigation and thus was not in a position to advise the Court as to whether it would proceed with the action.[3] (Doc. 2 at 1). The government made clear in its notice, however, that its "investigation w[ould] continue." *Id.*

The defendants thereafter filed a series of motions to dismiss as well as a notice of supplemental authority, *see* (Docs. 43, 44, 50, 57, 59, 62, 63, 65, 71,

---

[2] The relator has since dismissed a number of these defendants and has also twice amended its complaint. *See* (Docs. 5, 6, 10, 32).
[3] To the extent that several of the defendants suggest in their motions that the government has formally declined to intervene in this action, *see, e.g.,* (Doc. 57 at 1; Doc. 71 at 1), they are incorrect.

75, 90, 96), and the relator countered with its own responses in opposition, *see* (Docs. 86, 87, 97), the last of which was submitted to the Court on August 24, 2016, (Doc. 97).

Having now had an opportunity to review the parties' extensive pleadings, the government respectfully submits the following limited points and authorities for the Court's consideration.

## **POINTS AND AUTHORITIES**

### I.  **Supreme Court's Recent *Escobar* Decision**

Both the defendants and the relator pay scant, if any, attention to the Supreme Court's recent decision in *United Health Services, Inc. v. United States, et al. ex rel. Escobar*, ___ U.S. ___, 136 S. Ct. 1989 (June 16, 2016).  In *Escobar*, the Court endorsed the implied certification theory of FCA liability and reaffirmed that, in order to state a false claim under the FCA, the violation of the statute, regulation or contractual provision at issue must be material to the government's decision to pay a claim.  *Id.* at 1995-96, 2001.  Under the FCA, the term "material" is defined as "'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'"  *Id.* at 1996 (quoting 31 U.S.C. § 3729(b)(4)).

In evaluating whether a statute, regulation or contractual provision is material to the government's decision to pay, the Court rejected the distinction between conditions of payment and conditions of participation which a number of courts had previously employed.  *Id.* at 2001-2002.  Instead, the Court held that the government's decision to expressly identify a provision as a condition of

payment is relevant to, but not automatically dispositive of, the materiality inquiry. *Id.* at 2001.  Of significance here, the Court went on to hold that proof of materiality can also include, but is not necessarily limited to, evidence that a defendant knows that the government consistently refuses to pay claims based on noncompliance with the particular statutory, regulatory or contractual requirement at issue.  *Id.* at 2003.[4]

Putting aside the issue of the sufficiency of the relator's Second Amended Complaint, it cannot be seriously contested that the defendants knew that the government would refuse to pay Medicare claims based on noncompliance with the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b (AKS).  After all, the materiality of the AKS to the government's decision to pay claims under the Medicare program has long been well-established.  *See, e.g., United States ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 314 (3d Cir. 2011) (government does not get what it bargained for when a defendant is paid by CMS for services tainted by a kickback); *United States ex rel. McNutt v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1257 (11th Cir. 2005) ("undisputed that a violator of the Anti-Kickback Statute is disqualified from participating in a Medicare program"); *United States ex rel. Pogue v. Diabetes Treatment Centers of America*, 565 F.Supp.2d 153, 159 (D.D.C. 2008) ("Legion . . . cases have held [that] violations of [the] AKS . . . can be pursued under the FCA, since they would influence the Government's decision of whether to reimburse Medicare claims").

---

[4] For purposes of the FCA, a defendant is deemed to have the requisite scienter in this regard if he/she "has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.'"  *Id.* at 1996 (quoting 31 U.S.C. § 3729(b)(1)(A)).

Indeed, as clarified in the Patient Protection and Affordable Care Act, P.L. 111-148, a claim filed in violation of the AKS is a false claim for purposes of the FCA. 42 U.S.C. § 1320(a)-7b(g).

The defendants' efforts to minimize the significance of OIG Advisory Opinion No. 12-06 (AO 12-06) by arguing that the advisory opinion is "non-precedential"[5] are unavailing under *Escobar*. The precedential effect (or lack thereof) of an advisory opinion is a separate analytical inquiry wholly apart from the FCA's materiality prong. Put another way, the mere fact that an advisory opinion might lack precedential value does not imply or suggest that the conduct at issue in the advisory opinion would not have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Escobar,* 136 S. Ct. at 1996. Indeed, if anything, such an advisory opinion reflects the agency's considered view that the challenged conduct at issue – assuming the requisite intent under the AKS exists – would, in fact, be material to the government's decision to pay.

This conclusion is bolstered by the numerous proclamations of general application – ignored by the defendants – which were issued by OIG long before AO 12-06 and upon which AO 12-06 is predicated. As AO 12-06 itself makes clear in this regard:

> The OIG has *long-standing* concerns about arrangements, such as joint ventures, between those in a position to refer business, such as the [Ambulatory Surgical] Centers' physician-owners here, and those furnishing items or services for which Medicare or Medicaid pays, especially when all or most of the business of the joint venture is derived from one or more of the joint venturers.

---

[5] *See, e.g.*, Doc. 44 at 3, 9-10; Doc. 50 at 3, 14-16; Doc. 63 at 5; Doc. 71 at 6; Doc. 75 at 4.

AO 12-06, at 9 (emphasis added) (citing OIG's 1989 Special Fraud Alert on Joint Venture Arrangements, reprinted in the Federal Register in 1994, 59 Fed. Reg. 65,372-65,373 (Dec. 19, 1994); OIG Special Advisory Bulletin titled "Contractual Joint Ventures," 68 Fed. Reg. 23,148 (Apr. 30, 2003) (2003 Special Advisory Bulletin)).

In fact, it is in large part because the company model arrangement at issue in AO 12-06 is so similar to the suspect arrangement described in the 2003 Special Advisory Bulletin that OIG concluded in AO 12-06 that such a company model arrangement "could potentially generate prohibited remuneration under the anti-kickback statute . . ." AO 12-06, at 9-12.

In short, OIG put the defendants on notice via AO 12-06 and its prior proclamations that company model arrangements of the type at issue in this case could be deemed to be in violation of the AKS, and that claims to Federal healthcare programs stemming from such arrangements could therefore be considered to be in violation of the FCA.

## II. Defendants' Motions To Dismiss Relator's Second Amended Complaint With Prejudice

In their motions to dismiss, all of the defendants seek a dismissal of the relator's Second Amended Complaint with prejudice based on various alleged pleading deficiencies. With few exceptions, however, these motions draw no distinction as to whether the requested dismissal should be with prejudice to the

6

relator, the United States, or both.[6]  To extent that the defendants seek a dismissal with prejudice as to the United States, that request should be denied.

Contrary to the defendants' suggestion, the "courts have generally found that the dismissal of a relator's *qui tam* complaint for reasons unrelated to the merits are appropriately entered *without prejudice* to the United States."  *United States ex rel. Childress v. Ocala Heart Institute, Inc.*, Case No. 5:13-cv-470-Oc-22PRL, at 2 (M.D. Fla. Jan. 4, 2016) (Conway, J.) (emphasis added) (citing *United States v. KForce Gov't Sols., Inc.*, 2014 WL 5823460, at *9 (M.D. Fla. Nov. 10, 2014) (Honeywell, J.); *United States ex rel. King v. DSE, Inc.*, 2013 WL 610531, at *11 (M.D. Fla. Jan. 17, 2013) (Jenkins, M.J.), *report and recommendation adopted*, 2013 WL 608541 (M.D. Fla. Feb. 19, 2013) (Merryday, J.)).

There are a multitude of policy reasons which support this approach.  First, the government has no part in drafting a relator's *qui tam* complaint, and therefore should not be prejudiced if the relator fails to satisfy the pleading requirements imposed by the Federal Rules of Civil Procedure.

Second, were the courts to engage in a practice of dismissing relators' *qui tam* complaints with prejudice as to the government on the grounds that they were deficiently pled, it would create "perverse incentives" for private parties "to file FCA suits lacking in the required particularity, knowing full well that the government would be obligated to intervene and ultimately 'fill in the blanks' of

---

[6] The exceptions are Jax Anesthesia Providers, LLC, Southpoint Anesthesia, LLC, and Borland-Groover Clinic, P.A., all of which seek dismissal of the relator's Second Amended Complaint with prejudice solely as to the relator.  *See* (Doc. 50, at 4, 18).

the deficient complaint." *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 455 (5th Cir. 2005).

Third, dismissing a relator's complaint with prejudice as to the United States would additionally harm the government insofar as it would provide grounds for a defendant to argue, albeit incorrectly, that such a dismissal precludes future actions by the United States against the defendant. *McCready*, 251 F. Supp.2d at 120 ("Poor litigation practices by a relator c[an] harm the United States by raising a res judicata bar to a later action by the government or otherwise prejudicing its interests."). Such a dismissal would therefore fail to accord with the purpose of the FCA's *qui tam* provisions, which exist to assist the United States in ferreting out and pursuing fraud.

The rule that a dismissal of a relator's *qui tam* complaint for reasons unrelated to the merits should be without prejudice to the United States applies regardless of whether the government has elected to intervene in the action. *See Williams*, 417 F.3d at 455 (district court abused its discretion in declined *qui tam* action by dismissing claims as to the United States with prejudice based on the district court's finding that FCA complaint failed to meet the heightened pleading standard of Rule 9(b)). Indeed, as this Court pointed out in *Childress*, "several courts have modified judgments to reflect that the dismissal of a relator's *qui tam* complaint was without prejudice to the United States even where the United States has elected not to intervene." *Childress,* Case No. 5:13-cv-470-Oc-22PRL, at 2-3 (citing *Williams*, 417 F.3d at 455-56; *Urquilla-Diaz, et al. v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015)).

The preclusive effect of a dismissal with prejudice as to the United States is of particular concern here as the government is continuing to investigate the allegations against the defendants.  Recognizing that the government may not be in a position to make an intervention decision within the time frame imposed by the statute and the courts, the FCA expressly provides that the United States may later intervene in a *qui tam* action for "good cause."  *See* 31 U.S.C. § 3730(c)(3).  In this case, the government's investigation remains ongoing and it therefore respectfully reserves its right under the FCA to seek leave to intervene in this action or to file a separate suit at a later date.

        Respectfully submitted,

        A. LEE BENTLEY, III
        United States Attorney

Dated: September 9, 2016    By:    *s/ Christopher P. Tuite*
        CHRISTOPHER P. TUITE
        Assistant United States Attorney
        United States Attorney No. 085
        400 North Tampa Street, Suite 3200
        Tampa, FL 33602
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6200
        E-mail: christopher.tuite@usdoj.gov

        *Counsel for the United States of America*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on September 9, 2016, I caused the foregoing *United States' Statement Of Interest* to be filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    *s/ Christopher P. Tuite*       _
CHRISTOPHER P. TUITE
Assistant United States Attorney