## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA; THE
STATE OF FLORIDA; ex. rel FLORIDA
SOCIETY OF ANETHESIOLOGISTS,**

      **Plaintiffs/Relators,**

**v.**

                                       **Case No: 8:13-cv-2603-T-27AEP**

**UMESH CHOUDHRY, et al.,**

      **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** are Motions to Dismiss the Second Amended Complaint filed by

Defendants Advanced Anesthesia Associates, LLC and All Services Anesthesia, LLC (Dkt. 44), St.

Petersburg Endoscopy Center, LLC (Dkt. 57), Physicians Endoscopy Holdings, Inc. (Dkt. 59),

Umesh Choudhry, M.D. and Curvv, LLC (Dkt. 62), North Pinellas Surgery Center Holding

Company, LLC (Dkt. 63), North Pinellas Surgery Center, LLC (Dkt. 65), Safety Harbor Surgery

Center, LLC (Dkt. 71), West Coast Endoscopy Holdings, LLC (Dkt. 75), and Clearwater Ambulatory

Surgical Center (Dkt. 90), which are opposed in a consolidated response by Relator Florida Society

of Anesthesiologists ("FSA")(Dkt. 87).[1] Upon consideration, the motions are **GRANTED**.[2]

### BACKGROUND

The FSA is a "professional association [of] nearly 2,000 anesthesiologists throughout the

---

[1] The government filed a Statement of Interest (Dkt. 99), to which several Defendants responded (Dkts. 101, 102, 103, 104, 105, 106, 107).

[2] Defendants' Motion to Stay Discovery and to Extend Case Management Deadlines (Dkt. 84) has been granted by separate order.

State of Florida." (Dkt. 32 ¶ 9). Its Second Amended Complaint alleges that fifteen defendants violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*, the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b *et seq.* by engaging in two kickback schemes. (Dkt. 32). The Second Amended Complaint is due to be dismissed because it lacks specific allegations that satisfy Rule 9(b), Fed.R.Civ.P. as to the individual defendants.

FSA alleges that the first scheme, based in Pinellas County, "center[ed]" around Defendant Dr. Umesh Choudhry, who owned two anesthesia service companies, Defendants Advanced Anesthesia Associates, LLC and All Services Anesthesia, LLC. which provided anesthesia services to several ambulatory surgery centers, Defendants North Pinellas Surgery Center ("NPSC"), St. Petersburg Endoscopy Center ("SPEC"), Safety Harbor Surgery Center, LLC ("SHSC"), Clearwater Endoscopy Center ("CEC"), and West Coast Endoscopy Holdings (incorrectly named in the complaint as West Coast Endoscopy Centers Holdings, LLC).

The two anesthesia service companies allegedly secured contracts with the ambulatory service centers by agreeing to "shar[e] the revenue . . . with the owners of the ASCs that awarded [them] the contracts." (Dkt. 32 ¶¶ 54–78). Relying on Advisory Opinion No. 12-06 by the Office of the Inspector General of the Department of Health and Human Services, Relator alleges that "[t]herefore, Defendants [sic] use of the company model created an illegal kickback scheme in violation of the AKS." (Dkt. 32, ¶¶ 42-43; 46-48). The FSA alleges that the kickback scheme resulted in false billing to Medicare and Medicaid, and "led to over-utilization of anesthesia." (Dkt. 32, ¶ 52; 77-78).

The second scheme, based in Duval County, centered around Defendant Dr. Jack Groover and the physician group he owns an interest in, Defendant Borland-Groover Clinic. The FSA alleges

2

that Dr. Groover owned or co-owned two anesthesia service companies, Defendants Jax Anesthesia Providers, LLC and Southpoint Anesthesia LLC. and "used his reputation and large practice" to obtain contracts for his anesthesia service companies with a number of ambulatory surgery centers. (Dkt. 32 ¶¶ 80–92).[3]

Without distinguishing between Drs. Choudhry and Groover, the complaint alleges "Defendants are abusing the fact that they have a captive patient base as a result of their areas of practice, unlike anesthesiologists who depend for their practice solely on referrals" and "[t]herefore, besides being fraudulent, Defendants' conduct is coercive in nature and threatens the independence of anesthesiology as well as patient care." (*Id.* ¶ 91)

## STANDARD

To state a claim under the False Claims Act, a relator must satisfy two pleading standards.[4] First, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And while "[l]egal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

---

[3] Defendants Fleming Island Surgery Center, LLC and Southport Surgery Center, LLC.

[4] The same pleading standards apply to the Florida False Claims Act. *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1034 n. 5 (S.D. Fla. 2007); *U.S. ex rel. Schubert v. All Children's Health System, Inc.*, No. 8:11-cv-1687-T-27EAJ, Dkt. 68 n. 6 (M.D. Fla. 2013).

Significantly, a False Claims Act complaint must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002). The particularity requirement of Rule 9(b) is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (citing *Clausen*, 290 F.3d at 1310).

Generally, in order to plead the submission of a false claim with particularity, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result." *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012). And in the context of a kickback scheme, as the FSA acknowledges, "[t]o plead a violation of the Anti-Kickback Statute, the Relator must allege that (1) [defendant] knowingly and wilfully (2) offered or paid any remuneration (3) to induce a physician to refer a patient for services that may be paid by a federal health care [program." See 42 U.S.C. § 1320a-7b(b)(2); *United States ex rel. Mastej v. Health Mgmt. Assocs, Inc.*, 591 Fed. Appx 693, 698 (11th Cir. 2014).

## DISCUSSION

The "central question" in any False Claims Act case is "whether the defendant ever presented a 'false or fraudulent claim' to the government." *Hopper*, 588 F.3d at 1326 (quoting *Clausen*, 290 F.3d at 1311). A defendant violates the False Claims Act only by "knowingly ask[ing] the Government to pay amounts it does not owe." *Clausen*, 290 F.3d at 1311. And the FSA's allegations that "Defendants' conduct is coercive in nature and threatens the independence of anesthesiology as

4

well as patient care" is not sufficient, as the requirement of alleging the submission of a false claim cannot be overcome by detailing other improper activity. *Id.* Nor does Rule 9(b) permit a relator "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* Rule 9(b) requires "some indicia of reliability . . . in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *Id.* (emphasis original).

The first deficiency in the Second Amended Complaint is that it alleges two kickback schemes, one on the west coast of Florida involving Dr. Umesh Choudhry and related businesses, and the other on the east coast of Florida involving Dr. Jack Groover and related businesses, but without any factual allegations connecting the two. Nothing in the Second Amended Complaint connects the two schemes or two groups of defendants, other that the FSA's reference to "Defendants" throughout its complaint.

Secondly, the Second Amended Complaint impermissibly lumps together all defendants, failing to allege what conduct each defendant engaged in. In sum, the allegations lack sufficient particularity as each Defendant. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (dismissal proper when complaint "devoid of specific allegations with respect to each defendant"). Most Defendants are merely identified in passing and vaguely connected to the alleged kickback scheme. And the scheme itself is described only in broad, general terms, not with the particularity required by Rule 9(b). *See Hopper*, 588 F.3d at 1324 (*qui tam* complaint must allege "the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.").

.5

To the extent Defendants complain that the Second Amended Complaint fails to allege the submission of a false claim, their complaint has merit. The submission of a false claim to the government for payment is the "*sine qua non*" of a False Claims Act case, and the failure to allege the submission of a false claim is sufficient in itself to require dismissal. *Clausen*, 290 F.3d at 1311.

Although the FSA alleges that "defendants" falsely billed Medicare and Medicaid, rather than attributing the submission of a false billing to a particular defendant, the FSA lumps them together as "defendants." (Dkt. 32, ¶¶ 52 and 53). By referring to "defendants" collectively, each count of the Second Amended Complaint fails to distinguish between the defendants and therefore fails to meet the particularity requirements of pleading a False Claims Act claim or Claim under the Florida medicaid False Claims Act. And the FSA's allegations that "Defendants, acting in concert and/or through their own actions or through the acts of their officers and/or agents," committed the alleged violations is nothing more than a conclusory allegation without supporting facts. The Eleventh Circuit has explained that drawing "inferences about the submission of fraudulent claims would 'strip[] all meaning from Rule 9(b)'s requirements of specificity.'" *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) (quoting *Clausen*, 290 F.3d at 1312 n.21).

And because the complaint, in shotgun fashion, incorporates all preceding allegations into each count and fails to distinguish between the fifteen defendants, it is impossible to determine what factual allegations relate to which defendant, including the submission of the alleged false billing statements. *See United States ex rel. v. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir.2006) (complaint fails Rule 9(b) where relator "portrays the scheme and then summarily concludes that defendants submitted false claims to the government for reimbursement.").

Much of the dispute between the parties relates to whether the use of a company model is

6

appropriate, considering advisory opinions and bulletins issued by the Office of the Inspector General of the Department of Health and Human Services. *See* OIG Advisory Opinion No. 12-06; OIG Special Advisory Bulletin, "Contractual Joint Ventures," 68 Fed. Reg. 23,148 (2003); OIG Special Fraud Alert, 59 Fed. Reg. 65,372 (1994). This question need not be reached at this time, because even assuming the company model is "[i]mproper[, such] practices standing alone are insufficient to state a claim under [the False Claims Act] absent allegations that a specific fraudulent claim was in fact submitted to the government." *Hopper*, 588 F.3d at 1328. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1055 (11th Cir. 2015) (affirming partial dismissal of False Claims Act complaint because of failure to "plead with particularity how [the] scheme led" to false certification to government).

And finally, that FSA is not a corporate insider does not excuse the insufficiency of its pleading. In *Clausen*, the Eleventh Circuit addressed a similar "situation" where a corporate outsider asserted a *qui tam* claim:

> We are not unsympathetic to the situation in which Clausen finds himself. Most relators in *qui tam* actions are insiders. As a corporate outsider, he may have had to work hard to learn the details of the alleged schemes entered into by LabCorp through years of making contacts in and learning about the industry while not being privy to LabCorp's policy manuals, files and computer systems. But, *while an insider might have an easier time obtaining information about billing practices and meeting the pleading requirements under the False Claims Act, neither the Federal Rules nor the Act offer any special leniency under these particular circumstances to justify Clausen failing to allege with the required specificity the circumstances of the fraudulent conduct he asserts in his action.* 290 F.3d at 1314 (emphasis added).

The Second Amended Complaint will therefore be dismissed. Leave to amend will be granted

because this will be the first substantive revision to the original complaint.[5]

Accordingly,

Defendants Advanced Anesthesia Associates, LLC and All Services Anesthesia, LLC's Dispositive Motion to Dismiss and Motion to Strike (Dkt. 44), Defendant St. Petersburg Endoscopy Center, LLC's Motion to Dismiss (Dkt. 57), Defendant Physicians Endoscopy Holdings, Inc.'s Motion to Dismiss (Dkt. 59), Defendants Umesh Choudhry, M.D. and Curvv, LLC's Motion to Dismiss (Dkt. 62), Defendant North Pinellas Surgery Center Holding Company, LLC's Dispositive Motion and Memorandum to Dismiss and to Strike (Dkt. 63), Defendant North Pinellas Surgery Center, LLC's Dispositive Motion and Memorandum to Dismiss and to Strike (Dkt. 65), Defendant Safety Harbor Surgery Center, LLC's Motion to Dismiss (Dkt. 71), Defendant West Coast Endoscopy Holdings, LLC's Motion to Dismiss (Dkt. 75), and Defendant Clearwater Ambulatory Surgical Center's Motion to Dismiss (Dkt. 90) are **GRANTED**.[6]

The Second Amended Complaint is **DISMISSED** *without prejudice*. Relator is **GRANTED** 14 days to amend its complaint.

**DONE AND ORDERED** this _11__ day of October, 2016.

_____

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record

---

[5] The Court expresses no opinion as to the sufficiency of the proposed Third Amended Complaint, which is not yet properly before the Court.

[6] The motion to strike of Defendants Advanced Anesthesia Associates, LLC and All Services Anesthesia, LLC's Dispositive Motion to Dismiss and Motion to Strike (Dkt. 44) is denied as moot.

8